Belknap
No. 89-125

MARK A. MOONEY

v.

CITY OF LACONIA

April 11, 1990

*Wescott, Millham & Dyer,* of Laconia (*Peter V. Millham* on the brief and orally), for the plaintiff.

*Decker, Fitzgerald & Sessler,* of Laconia (*James N. Sessler* on the brief and orally), for the defendant.

BATCHELDER, J.   In this declaratory judgment action seeking to have the Laconia School Impact Fee Ordinance declared invalid and void, the defendant City of Laconia (City) appeals a ruling of the Superior Court (*O'Neil,* J.) granting the plaintiff's motion for summary judgment. The sole issue upon which summary judgment was granted was the City's legal authority to impose what it calls a "growth impact fee" upon certain new residential construction within the city. Because the City failed to follow the procedures required by its own ordinance governing the levy of special assessments, we affirm the trial court's grant of summary judgment and do

not reach the issue of the City's legal authority nor the constitutionality of the impact fee ordinance.

Since this case comes to us as the result of a grant of summary judgment, the available facts are sparse but sufficient for our purposes. We present these facts mainly as a background, as the legal issue of the City's compliance with its own ordinance is controlling. The plaintiff, Mark Mooney, is the owner of a manufactured housing park in Laconia, which has been approved by the Laconia Planning Board for two hundred and thirty-eight units. His development is located at the southerly boundary of the city. On April 26, 1988, the Laconia City Council adopted a school impact fee to be paid as a condition on the issuance of any residential building permits. The impact fee is to be charged at the rate of sixty-nine cents per square foot of building area. The school for which these funds are to be used is not yet constructed, but is planned to be located in the northerly portion of the city.

The City operates under a charter providing a Council-Manager form of government. Through a referendum held in 1970, the voters adopted the City's current charter, which incorporated provisions of then-effective RSA chapter 49-A (repealed by Laws 1979, 241:3).

The language of RSA chapter 49-A, which is the major focus of our attention in this appeal, is found in sections 77 and 78 under the general heading "Special Assessments."

> "49-A:77 Council Resolution. The council shall have power to determine that not exceeding fifty per cent of the expense of any public improvement shall be defrayed by special assessments upon the property especially benefited and shall so declare by resolution. Such resolution shall state the estimated cost of the improvement, what proportion of the cost thereof shall be paid by special assessments, and what part, if any, shall be a general obligation of the city, the number of installments in which special assessments may be paid, and shall designate the districts or land and premises upon which special assessment shall be levied.

> "49-A:78 Procedure Fixed by Ordinances. The council shall prescribe by general ordinance complete special assessment procedure concerning plans and specifications, estimate of costs, notice and hearing, the making of the special assessment roll and correction of errors, the collection of special assessments, and any other matters concerning the making of improvements by the special assessment method."

RSA 49-A:77, :78 (repealed by Laws 1979, 241:3).

These sections were adopted as the language of sections 7:01 and 7:02, respectively, in Article VII of the 1970 charter. With the adoption of these sections, the city council gained the authority to levy special assessments for any municipal capital improvements undertaken by it. The legislature, however, repealed RSA chapter 49-A in 1979, and the effect of that repeal is disputed here; in particular, the parties dispute whether the repeal of RSA chapter 49-A by implication also repealed sections 7:01 and 7:02, and with them the City's power to levy special assessments, thus presenting an issue which we do not address in this appeal.

In accordance with section 7:02 of the charter, on October 29, 1984, the Laconia City Council adopted chapter 67 of its ordinances, providing a procedure by which to impose special assessments. Among other procedural specifics, chapter 67 allows the enactment of special assessments to be initiated by only one of two methods:

> "(a)  A petition signed by the owners of at least two-thirds of the property proposed for special assessments; or,
>
> (b)  A petition signed by the city manager having attached thereto consent, in writing, from the owners of at least one-half of the property proposed for the special assessment."

Ch. 67, § 1. Chapter 67 also requires the city assessor to compute the amount of the special assessment per parcel of property assessed and to bill the owners of assessed properties at the time they are billed for their annual real estate taxes. Ch. 67, § 8. Through the enactment of sections 7:01 and 7:02, and chapter 67, the City has, if the repeal of RSA chapter 49-A has not affected the legitimacy of charter provisions enacted pursuant to it, both the authority to impose special assessments and a procedure by which to do so.

On December 28, 1987, the city council adopted still another ordinance, chapter 69, providing a procedure to be followed in levying what the ordinance denominated "growth impact fees." It is noteworthy that at both the hearing on the summary judgment motion in the superior court, and on appeal, the City contends that the authority to enact these "growth impact fees" lies in sections 7:01 and 7:02 of the city charter and in chapter 67 of the general ordinances, governing the levy of special assessments. Although in its written objection to plaintiff's motion for summary judgment, and in its affidavit below, the City failed to make the argument that "growth impact

fees" are essentially special assessments, on appeal we treat them as such.

Among the many provisions of chapter 69 relating to the imposition of "growth impact fees" are the following ones, relevant to this appeal. "Growth impact fees" are to be levied upon "such new developments . . . [in an amount] which is proportionate to the share of the cost of any capital improvement or facility to be built by the City in order to accommodate such new development." Ch. 69, § I. The determination of the need to impose a growth impact fee is to be made initially by either the city manager or the chairman of the Laconia Planning Board and is to be presented to the city council in the form of a petition signed by either party. Ch. 69, § II. The building official is responsible both for computing the amount of the fee for each proposed improvement and for collecting the fee. Ch. 69, § IX. The building official must collect the fee prior to issuing a building permit. *Id.*

On February 18, 1988, Kenneth D. Boehner, the Laconia City Manager, submitted a document entitled "Petition for School Impact Fees" to the members of the Laconia City Council. It is asserted in the petition that it is filed pursuant to the provisions of chapter 69 of the public ordinances of the City of Laconia. The assigned reasons for the petition are contained therein as follows:

> "Increasing elementary enrollments, a result of increased residential development, have stressed the Laconia School District. With all District elementary schools close to or above operating capacity, additional enrollments will not be conducive to public health, safety and welfare. A new elementary school is needed to relieve the pressures on other District schools.
>
> An estimated 38.88% of the need for a new elementary school is attributable to residential growth expected over the next ten years. Therefore, 38.88% of the capital cost of the proposed school, or $1,594,080—less, credit for property tax payments—will be raised by the impact fee system.
>
> Throughout the entire City, new residential housing units will be charged the fee on a square foot basis. . . .
>
> The duration of this impact fee will be ten years from the date of implimentation [sic]."

On April 26, 1988, the city council adopted the growth impact fee requested and petitioned by the City's manager. The purpose was to

finance in part the construction of a new elementary school, and the fee amounted to a charge of sixty-nine cents per square foot of building area to be imposed upon the issuance of every building permit for the construction of any residential buildings or additions thereto. The adoption was made pursuant to chapter 69.

The plaintiff was assessed the fee and filed a petition in superior court for a declaratory judgment, requesting the court to declare invalid and void the April 26, 1988 ordinance adopting the school impact fee. In the petition he also requested the court to order the City to repay with interest any fees it had collected under the ordinance, to issue building permits without the imposition of the fee, and to pay plaintiff's attorney's reasonable fees and expenses. After the City filed its answer to the petition for declaratory judgment, the plaintiff filed a motion for summary judgment on the limited issue of the legal authority of the City to adopt the impact fee, arguing that chapter 69 and the petition adopted on April 26, 1988, do not rest upon any legal authority. In its answer, the City relied for authority to impose the school impact fee upon general police powers delegated to it by the legislature, the "essential legal framework" of which existed in RSA 674:36 and RSA 674:44, both addressing the regulatory power of planning boards established by local legislative bodies. The City also argued that a number of this court's decisions, including *Land/Vest Props., Inc. v. Town of Plainfield*, 117 N.H. 817, 379 A.2d 200 (1977) and *KBW, Inc. v. Bennington*, 115 N.H. 392, 342 A.2d 653 (1975), support the proposition that the legislature intended to delegate to cities the authority to require developers to pay their share of off-site improvement costs necessitated by the development. During oral argument on the summary judgment motion, the City attempted to rely on the assertion that the school impact fee is actually a special assessment, authorized under section 7:01 of its charter.

The trial court ruled in the plaintiff's favor. Relying upon *Dugas v. Town of Conway*, 125 N.H. 175, 181, 480 A.2d 71, 75 (1984), the court reasoned that the City had only those powers granted to it by the legislature and that "the City has provided no authority by which [it could,] acting in the role of planning board or building inspector[,] . . . require the payment of impact fees." The City argues before us that the growth impact fee imposed under chapter 69 is in fact a special assessment, levied to offset a portion of the expense necessary to build a public elementary school, and that authority to levy such an assessment exists in section 7:01 of the city charter. The

plaintiff responds that the City lacks authority to impose the fee, since the repeal of RSA chapter 49-A repealed the portion of the City's charter, section 7:01, permitting special assessments. Further, he asserts that the city council did not enact a special assessment according to the procedure set out in section 7:02 and chapter 67, and in the alternative, he argues that if the school impact fee is in fact enacted under the city charter's provisions relative to special assessments, the fee as enacted is illegal, unjust and unconstitutional.

■ We agree that even if the impact fee is a special assessment, as the City contends, the procedures of section 7:02 and chapter 67 were not followed in enacting it and, consequently, it is invalid. Under chapter 67, enacted pursuant to section 7:02, the petition for the school impact fee must be signed either by the owners of at least two-thirds of the property proposed for the special assessments, or by the city manager, but having attached thereto the written consent of the owners of at least one-half of the property proposed for the special assessment. Ch. 67, § 1. The petition contained in the record before us is signed by the city manager, Kenneth Boehner, but lacks the attached written consent of the owners of one-half, much less two-thirds, of the property targeted for assessment. Thus, the petition did not comply with chapter 67.

Additionally, chapter 67 requires that the amounts of individual special assessments be calculated by the city assessor and billed to the owners of specially assessed properties along with regular annual real estate taxes. Ch. 67, § 8. As adopted, under the school impact fee ordinance of April 26, 1988, the building official computes the total fee, based on a charge of $.692472 per square foot, and collects the fee from each building permit applicant, before issuing the permit. In this second aspect, regarding the calculation and collection of the fee, the April 26, 1988 school impact fee ordinance does not comply with chapter 67.

Because the fee, as adopted, violates chapter 67 of the City's ordinance, we do not address the merits of the special assessment, had it been validly enacted, including the continued validity, in light of the legislature's repeal of RSA chapter 49-A, of sections 7:01 and 7:02 of the City charter. Nor need we address the constitutionality issues raised by the plaintiff under *Seal Tanning Co. v. City of Manchester*, 118 N.H. 693, 393 A.2d 1382 (1978); *Hooksett Drive-In Theatre, Inc. v. Hooksett*, 110 N.H. 287, 266 A.2d 124 (1970); *Rollins v. Dover*, 93 N.H. 448, 44 A.2d 113 (1945).

Finally, we uphold the trial court's order that the City pay the plaintiff's attorney's fees. The plaintiff conferred a substantial benefit on Laconia building permit applicants, citizens and taxpayers by bearing the burden of setting aside this invalid special assessment. *Irwin Marine, Inc. v. Blizzard, Inc.*, 126 N.H. 271, 277, 490 A.2d 786, 791 (1985). His attorney's fees ought, therefore, to be shifted to the City of Laconia. *Id.*

*Affirmed.*

All concurred.