# Peter Robes, Ash Bullard, Charles Potter, Michael Wood, Roy Hathorn and Fred Davis v. Town of Hartford, et al.

[636 A.2d 342]

No. 92-098

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed December 10, 1993

*William D. Cohen* of *Abell, Kenlan, Schwiebert & Hall, P.C.*, Rutland, for Plaintiffs-Appellants.

*Peter F. Welch* of *Welch, Graham and Manby*, White River Junction, for Defendant-Appellee.

**Johnson, J.** Plaintiffs, developers of new residential buildings in the Town of Hartford, appeal from the order of the superior court, which held that 24 V.S.A. § 3615, as that statute read in 1986, authorized the Town of Hartford to impose an impact fee on new developments to finance future expansion of the Town's sewage capacity. Defendants appeal the trial court's award of attorney's fees to plaintiffs. We affirm in part and reverse in part.

The Town of Hartford operates a municipal sewage system to which all residential buildings are required to be connected. On December 29, 1986, the Town's Board of Selectmen passed a resolution imposing a "Plant Impact Fee" on all residential structures not occupied before January 1, 1987, and on existing residential structures requiring additional demand for sewage services after January 1, 1987. The Town assessed the impact fee at a rate of $600 per bedroom and assumed each structure would have three bedrooms, for a total fee of $1800 for each affected structure. The purpose of the Plant Impact Fee was to collect capital funds to finance the future expansion of the Town's sewage capacity.

Plaintiffs, after incurring and paying the Plant Impact Fee, filed suit to declare the Plant Impact Fee illegal, to enjoin the Town from further enforcement, and to recover their payments and other damages, including attorney's fees and costs.

After a bench trial, the court entered judgment for defendants. The court held that 24 V.S.A. § 3615 authorized the Town to impose the Plant Impact Fee and that the fee rate was both reasonable and rationally related to the Town's purpose of financing expansion or new construction of sewage facilities to meet anticipated needs. The court, however, also held that the 1986 resolution[1] was "defective" insofar as it lacked a mechanism for returning capital funds that went unexpended after a

---

[1] The trial court referred to the 1986 resolution as an "ordinance," but the record is clear that the enactment was in the form of a resolution. We have previously held that a municipality may impose impact fees by resolution only if the resolution satisfies the requisites of an ordinance. *Herbert v. Town of Mendon*, 159 Vt. 255, 260, 617 A.2d 155, 158 (1992); see 24 V.S.A. § 1972 (setting forth requisites for enactment of ordinance). But we need not decide whether the 1986 resolution satisfies the requisites of an ordinance because the parties stipulated at trial that there was no dispute as to "enactment issues."

reasonable period of time. The court found that this defect was not fatal to the operation of the Plant Impact Fee and ordered the Town to amend its ordinance to require the refund of monies not expended within six years of collection. Nevertheless, the court awarded attorney's fees to plaintiffs, on the theory that plaintiffs' suit, though not successful, had been "meritorious" in bringing to light a defect that ultimately preserved a so-called "common fund."

Plaintiffs appeal the trial court's findings that the Town had acted pursuant to statutory authority when it imposed the impact fee and that the fee rate was reasonable and related to a legitimate public purpose. Defendants, on cross-appeal, claim that it was error for the trial court to award attorney's fees and costs to plaintiffs, who had not prevailed on any of their claims. We address these issues in turn.

## I.

Plaintiffs first argue that the trial court erred in holding that 24 V.S.A. § 3615 authorized the Town to impose the Plant Impact Fee. At the time the Town enacted its Plant Impact Fee in 1986, § 3615 authorized a municipality to establish sewage disposal charges, "to be paid at such times and in such manner as the [municipal sewage disposal] commissioners may prescribe," based on: (1) metered water consumption; (2) the number and kind of plumbing fixtures; (3) the number of persons residing in or frequenting the premises served; (4) the appraised value of the premises; or (5) a combination of the enumerated bases or "any other equitable basis." 24 V.S.A. § 3615 (1983) (amended 1989).[2]

Plaintiffs argue that § 3615 permitted municipalities to impose a sewage charge only to recoup money expended on an

---

[2] Sections 3615 and 3616 were amended in 1989 to provide greater flexibility for municipalities to impose sewage charges. 1989, No. 45, §§ 5, 6. Section 3615 now permits municipalities to "establish annual charges separately for . . . fixed operations and maintenance costs (not dependent on actual use), and variable operations and maintenance." Section 3616 now permits municipalities "to develop a dedicated fund which may be created by the [sewage] commissioners to finance major rehabilitation, major maintenance and upgrade costs for the sewer system." In addition, with the enactment of Act 200 in 1988, municipalities were granted general authority to impose impact fees to finance capital projects. See 24 V.S.A. §§ 5200–5206.

existing municipal sewage system, not to collect money in anticipation of future needs. Plaintiffs also argue that even if § 3615 did contemplate charges for future needs, the statute required that the Town use an "equitable basis" for establishing such charges; they contend that the Plant Impact Fee does not use an "equitable basis" and must be struck down. We believe plaintiffs' interpretation of § 3615 is too narrow.

Before turning to plaintiffs' arguments, we note that in Vermont a municipality has only those powers and functions expressly granted to it by the legislature, such additional functions as may be incident, subordinate or necessary to the exercise thereof, and such powers as are essential to the declared objects and purposes of the municipality. *Bryant v. Town of Essex*, 152 Vt. 29, 36–37, 564 A.2d 1052, 1056 (1989). We construe municipal acts strictly, and we resolve any fair, reasonable, substantial doubt concerning a municipality's authority to act against the municipality. *In re Ball Mountain Dam Hydroelectric Project*, 154 Vt. 189, 192, 576 A.2d 124, 126 (1990).

## A.

Plaintiffs contend that § 3615 cannot authorize the Plant Impact Fee because the fee is not a "sewage disposal charge" based on actual use. They point to our holding in *Kirchner v. Giebink*, 150 Vt. 172, 552 A.2d 372 (1988), to support their contention. In *Kirchner*, we held that § 3615 contained "*limiting* statutory language," *id.* at 183, 552 A.2d at 379, because it "authorize[d] 'sewage disposal charges' based upon five possible means of determining a fair charge for use," *id.* at 181, 552 A.2d at 378, and did so in "very specific language," *id.* at 183, 552 A.2d at 379. Plaintiffs argue that the Town failed to base its Plant Impact Fee on one of the five bases enumerated in § 3615. We disagree.

Defendants do not dispute that they did not base the Plant Impact Fee on any of the first four bases enumerated in § 3615. Defendants claim, however, that they acted pursuant to § 3615(5), which permits sewage charges based on a combination of the enumerated bases "or any other equitable basis." Defendants argue that this Court, in *Handy v. City of Rutland*, 156 Vt. 397, 400–01, 598 A.2d 114, 116 (1990), recognized that § 3615(5) authorized sewage impact fees to finance system improvements.

In *Handy*, we held that § 3615 authorized the City of Rutland to impose an impact fee on extraterritorial users to defray the costs of expanding the city's sewage system. *Id.* at 402, 598 A.2d at 117. We acknowledged that "§ 3615 does limit the bases upon which a municipality may fix sewer rates." *Id.* But we also found that § 3615 permits charges to be paid "'in such manner as the [municipal sewage] commissioners may prescribe'"; that § 3615(5) permits such charges to be based on "'a combination of any of [four enumerated] bases or any other equitable basis'"; and that "'[t]he [sewage] commissioners may change the rates of such charges from time to time as may be reasonably required.'" *Id.* at 400–01, 402, 598 A.2d at 116, 117 (quoting 24 V.S.A. § 3615 (1983) (amended 1989)).

Plaintiffs contend that *Handy* authorizes only extraterritorial exactions under § 3615, and not, as here, municipal exactions on planned sewage use within the municipality's borders. Plaintiffs are correct that our decision in *Handy* involved an exaction on extraterritorial users not otherwise subject to municipal controls. *Id.* at 402, 598 A.2d at 117. But our decision to uphold the city's authority under § 3615 did not rely on the exaction's extraterritorial nature. As we stated in *Handy*, "Vermont law . . . does not distinguish between resident and nonresident customers." *Id.* at 404, 598 A.2d at 118. Rather, the extraterritorial nature of the city's exaction served to clarify the scope of authority provided in § 3615. Because the plaintiffs in *Handy* were not residents of the City of Rutland subject to other municipal charges or controls, we found no conflict between § 3615 and other statutory sections under which the City might have imposed sewage charges. *Id.* at 402, 598 A.2d at 117. In the absence of such conflict, we were easily able to conclude "that the type of hookup fee imposed by the City of Rutland was within the scope of fees authorized by § 3615, which allows municipal sewer commissioners to establish charges to be paid 'in such manner as the commissioners may prescribe.'" *Id.* (quoting 24 V.S.A. § 3615 (1983) (amended 1989)).

We believe that in this case the Town also exercised proper authority under § 3615. When the Town passed its 1986 resolution, regulations required the Town to begin planning for expanded sewage capacity when its current facilities reached eighty percent of total capacity. In implementing the Plant Im-

pact Fee through the 1986 resolution, the Town exercised a laudable degree of foresight and attempted to soften the blow that a more rapid planning and construction schedule might entail. The Town's foresight was borne out by the fact that daily usage of its sewage system increased from forty-five percent of capacity to sixty-five percent of capacity in the time between the passage of the 1986 resolution and the 1991 trial. Under these circumstances, we are hard pressed to view the Town's actions as falling outside the limits of § 3615.

■ Plaintiffs, however, argue that the provisions of chapters 97 and 101 of Title 24, when read in pari materia, restrict a municipality's power to impose sewage charges under § 3615. Specifically, they contend that even if we read § 3615 to allow a municipality to impose sewage charges not based on actual use, that power is limited by the restrictions on the use of those charges authorized in § 3616. We disagree.

Plaintiffs are correct that this Court must read provisions that are part of the same statutory scheme in pari materia. *Drumheller v. Shelburne Zoning Bd. of Adjustment*, 155 Vt. 524, 529, 586 A.2d 1150, 1152 (1990). Moreover, we have held that § 3616 does set forth the permissible uses of the proceeds of § 3615 charges. *Kirchner*, 150 Vt. at 181, 552 A.2d at 378. But we find that §§ 3615 and 3616, and other applicable provisions of chapters 97 and 101, when read in pari materia, support the Town's, rather than plaintiffs', position.

In § 3616, as that statute read in 1986, the legislature required that a municipal sewage department's "charges and receipts" "shall only be used and applied to pay the interest and principal of the sewage disposal bonds of such municipal corporation as well as the expense of maintenance and operation of the sewage disposal department or other expenses of the sewage system." 24 V.S.A. § 3616 (1983) (amended 1989).

Plaintiffs argue that § 3616 limits a municipality to three types of expenditures: (1) repaying the interest and principal of sewage disposal bonds; (2) paying current maintenance and operating expenses of the sewage system; or (3) paying other expenses of the system. They urge us to read the words "other expenses" in the final phrase of § 3616 to mean "other current expenses," i.e., identifiable and specific costs, and not to mean unspecified future expenditures.

We are constrained from reading the word "expenses" in § 3616 to mean only "current expenses" or "operating expenses." First, § 3616 by its express terms permits a municipality to use sewage charges to pay "the expense of maintenance and operation of the sewage disposal system *or* other expenses of the sewage system" (emphasis added). If we read the words "other expenses" to mean the same as "the expense of maintenance and operation," then the statute contains a redundancy. We will not interpret a statute in a way that renders a significant part of it pure surplusage. *State v. Beattie*, 157 Vt. 162, 165, 596 A.2d 919, 921 (1991). Second, we presume that the legislature chose its words advisedly. *State v. Papazoni*, 159 Vt. 578, 580, 622 A.2d 501, 503 (1993). If the legislature had intended the payment of "current expenses," then it would have used the more specific term rather than the general term "expenses." See *State v. Camolli*, 156 Vt. 208, 213, 591 A.2d 53, 56 (1991).

Chapters 97 and 101 of Title 24 do not specially define the word "expenses." The ordinary meaning of the word "expense" is "[a]n outlay; charge; cost; price." Black's Law Dictionary 577 (6th ed. 1990). We note that plaintiffs, in their brief, use the words "expenses" and "costs" interchangeably when discussing the application of §§ 3615 and 3616. We also note that chapter 91 of Title 24 defines "expense" as a "cost," i.e., "the *cost* of architects, surveyors, engineers, contractors, lawyers or other consultants or experts as well as current operating *expenses* to be incurred by the [consolidated water] district." 24 V.S.A. § 3343(b) (emphasis added). Chapters 91 and 105 of Title 24 provide special definitions of the words "cost," *id.* § 3341(b)(4), and "costs," *id.* § 3672(a)(8). As these definitions are nearly identical, we set forth the definition of "costs" from 24 V.S.A. § 3672(a)(8), which relates to consolidated sewer districts:

> "Costs" as applied to a sewage system include the purchase price of any such system, the cost of construction, the cost of all labor, materials, machinery and equipment, *the cost of improvements*, the cost of all lands, property, rights, easements and franchises acquired, financing charges, interest prior to and during construction and, if deemed advisable by the sewer commissioners for one year after completion of construction, cost of plans and specifications,

surveys and estimates of cost and of revenues, cost of engineering and legal services, and *all other expenses necessary or incident to determining the feasibility or practicability of such construction.*

24 V.S.A. § 3672(a)(8) (emphasis added).

When the same word is used in statutes in pari materia, it will bear the same meaning throughout, unless it is obvious that another meaning was intended. *State v. Welch*, 135 Vt. 316, 321, 376 A.2d 351, 354 (1977). The foregoing definition indicates that "costs" and "expenses," as used in Title 24, do not refer solely to operating expenses or expenses already incurred, as plaintiffs contend. Based on the definitions of "expense" and "cost" or "costs" used elsewhere in the title, and on the plain, ordinary meaning of "expenses," we find that § 3616 permits "sewage disposal charges" to be used as defendants have ordered under the Plant Impact Fee enactments.

## B.

Plaintiffs argue, however, that the impact fee is not "equitable," as required by 24 V.S.A. § 3615(5), because it does not treat all town residents equally, and because each affected contributor pays for the equivalent of 150 gallons of water per bedroom for three bedrooms, even though in some cases actual water usage is significantly less than 150 gallons per bedroom and the actual number of bedrooms is fewer than three. Plaintiffs are correct that a municipal exaction under § 3615(5), even though not based on actual water or sewer usage, must nonetheless be "equitable." *Handy*, 156 Vt. at 404, 598 A.2d at 118. But we disagree with plaintiffs' contentions because we believe the Town used an equitable basis in setting its fee rate.

Plaintiffs first argue that the impact fee is inequitable because it does not treat all residents equally. This argument is insupportable under Vermont law. We have consistently upheld disparate classifications of property if the classification is reasonably related to the purpose for which it is established. See, e.g., *In re Property of One Church Street*, 152 Vt. 260, 266, 565 A.2d 1349, 1352 (1989) (upholding property tax classification). In this case, as we have already noted, the Town faced a regulation that required the Town to begin planning for sewage sys-

tem expansion when its current system reached eighty percent of total capacity. The Plant Impact Fee recognizes this and affects only residential structures that will cause the need for additional sewage capacity. We find that it reasonably related to the regulatory purpose to ask those who will impose new or additional demands on the system to pay for the expansion required as a result.

Plaintiffs' second argument is that the impact fee is inequitable because it does treat all affected contributors equally, regardless of their actual usage. As we discussed above, we do not view 24 V.S.A. § 3615 as requiring a town to base a sewage charge on actual sewage usage only. The trial court found that the Town had based its Plant Impact Fee on gallonage allocation standards established by the United States Environmental Protection Agency and adopted by the Vermont Agency of Natural Resources. These standards establish the amount of reserve capacity a municipal sewage system must set aside for each structural type, regardless of a particular structure's actual usage. According to these standards, each residential connection to a municipal sewage system requires the system to reserve sewage capacity equal to 150 gallons of water per bedroom per day, with each residence deemed to contain three bedrooms on average. On this basis, the Town assessed a Plant Impact Fee of $1800 for each affected structure.

In *Handy*, we found that a hookup fee based on "the maximum amount of effluent that may be discharged under plaintiffs' Act 250 permit" was "certainly" equitable under § 3615(5). *Handy*, 156 Vt. at 405, 598 A.2d at 118. Here, the Town based its Plant Impact Fee on the actual amount of reserve capacity it was required, under state and federal regulations, to set aside for plaintiffs' intended uses. We find that the Town's basis, which reflected an actual amount of required reserve capacity, was certainly as equitable as the basis found equitable in *Handy*, which reflected a potential amount of permitted discharge.

For the foregoing reasons, we conclude that the Town's basis in imposing the Plant Impact Fee was "equitable" under 24 V.S.A. § 3615(5).

## II.

■ Plaintiffs also claim that the trial court erred in holding that the fee rate itself was reasonable and bore a "rational nexus" to a legitimate public purpose. They appear to rely on our holding in *Handy* for the proposition that municipal sewer rates, when authorized by statute, must undergo a separate determination of their reasonableness. *Handy*, 156 Vt. at 402–03, 598 A.2d at 117–18. In *Handy*, we found that "Vermont law . . . requires that [sewer] rates be fair, equitable and reasonable." *Id.* at 404, 598 A.2d at 118. But the *Handy* decision was limited to a holding that "the reasonableness of a city's *extraterritorial* sewer rates is an appropriate issue for judicial review." *Id.* (emphasis added).

Plaintiffs ask us to extend the *Handy* decision to all municipal sewage rates. We need not reach this question, for we find as a matter of law that plaintiffs have failed to sustain their burden of proving that the Selectboard's actions were unreasonable. As we clearly stated in *Handy*, "because the rates established by a lawful rate-fixing body are presumed reasonable, the persons challenging the rates bear the burden of showing that they are unreasonable." *id.* at 404, 598 A.2d at 118.

At trial, plaintiffs presented evidence showing that the Town had not conducted studies to determine the necessity or cost of additional sewage capacity. But plaintiffs presented no studies of their own showing that additional capacity was not necessary or that the costs were unreasonable. See *id.* at 405, 598 A.2d at 119 (plaintiffs failed to meet burden of proving that sewer fee was unreasonable when they presented no cost analyses or other evidence showing that fee was inappropriate); *South Shell Investment v. Town of Wrightsville Beach*, 703 F. Supp. 1192, 1203 (E.D.N.C. 1988), *aff'd*, 900 F.2d 255 (4th Cir. 1990) (plaintiffs' conclusory arguments where they challenge reasonableness of sewage impact fee but offer no evidence showing fee is unreasonable). In the absence of evidence of unreasonableness, plaintiffs' arguments are conclusory only, and hence meritless.

Plaintiffs also failed to present any evidence that defendants acted arbitrarily or unreasonably in calculating the fee rate itself. Indeed, the trial record discloses that plaintiffs' witnesses offered testimony showing that the Town used four separate

bases to determine its impact fee rate: (1) the actual cost of constructing the Town's sewage facilities ten years earlier, which came to approximately $5 per gallon per day without correcting for inflation; (2) the advice of consultants that the cost of constructing new wastewater treatment capacity in Vermont was $5–6 per gallon per day of additional capacity; (3) the advice of the Agency of Natural Resources that a $4 per gallon figure for adding new sewage capacity was "a low figure" and thus acceptable under guidelines that required the Town to charge no more than the actual cost of construction; and (4) information provided by "five or six communities in the state who had some sort of capital or impact fees in place right now" and whose "computations on average indicated around five dollars and forty cents per gallon . . . [for] adding new wastewater treatment plants." The record reflects that the Town's decision to fix a $4 per gallon impact fee was neither arbitrary nor unreasonable. We hold that it was not error for the trial court to find that the Plant Impact Fee was reasonable.

Thus, we need not reach plaintiffs' contention that the trial court erred in finding that the Plant Impact Fee bears a "rational nexus" to the declared municipal purpose. Plaintiffs acknowledge that Vermont has not heretofore adopted the "rational nexus" test for determining the validity of municipal charges and fees. But cf. *Vermont Ass'n of Realtors v. State*, 156 Vt. 525, 530, 593 A.2d 462, 465 (1991) (state agency regulation must have some nexus to agency's grant of authority); and *In re Club 107*, 152 Vt. 320, 324, 566 A.2d 966, 968 (1989) (there must be some nexus between Liquor Control Board regulation and Board's specifically granted power or between regulation and legitimate regulatory purpose). We decline to adopt this test today because, as we stated above, plaintiffs failed to meet their burden of proof at trial and now offer only conclusory arguments that do not warrant review.

## III.

Finally, defendants on cross-appeal claim as error the trial court's award of attorney's fees and court costs to plaintiffs under an apparent "common fund" theory. We agree and reverse this award.

■ The trial court awarded attorney's fees to plaintiffs, even though they had not prevailed on any of their claims, because their lawsuit had uncovered a "defect" in the Town's impact fee resolution, namely, that the enactment failed to provide for the refund of capital funds that went unexpended for a reasonable period of time. The court ordered the Town to amend its resolution to provide for a refund mechanism. The court then awarded attorney's fees to plaintiffs, reasoning that the refundable monies represent "a common fund . . . created in part by the contributions of the named plaintiffs here, and protected by the efforts of their attorneys in bringing to light the potential invalidity of the ordinance."

Vermont has consistently applied the American Rule with respect to the award of attorney's fees. *Anderson v. State*, 147 Vt. 394, 395, 518 A.2d 360, 360 (1985). Under the American Rule, attorney's fees are ordinarily unrecoverable in the absence of statutory authority or the parties' contractual provision concerning this expense. *Converse v. Town of Charleston*, 158 Vt. 166, 169, 605 A.2d 535, 537 (1992). In this case, there is neither an agreement between the parties nor statutory authority to support the court's award of attorney's fees to plaintiffs.

In other jurisdictions that apply the American Rule, the courts have created certain "equitable exceptions" to the Rule, such as the principles of "common fund," "private attorney general," "vexatious litigant," and "substantial benefit." *Residents ad hoc Stadium Comm. v. Trustees of Cal. State Univ.*, 152 Cal. Rptr. 585, 596–97 (Ct. App. 1979). But even under an equitable exception, unsuccessful litigants do not qualify for attorney's fees. *Carroll v. State Bar of Cal.*, 213 Cal. Rptr. 305, 314 (Ct. App.), *cert. denied*, 474 U.S. 848 (1985).[3]

Under the "common fund" doctrine, relied on by the trial court in the instant action, attorney's fees are not paid by the

---

[3] In at least two cases, plaintiffs lost on their individual claims and yet were awarded attorney's fees under equitable theories. *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421, 429–30 (8th Cir. 1970); *Brown v. State*, 565 So. 2d 585, 592 (Ala. 1990). In both cases, however, plaintiffs brought both individual and class claims and prevailed on one or more class claims. See *Parham*, 433 F.2d at 426 (violation of Title VII of Civil Rights Act of 1964 with respect to plaintiff class); *Brown*, 565 So. 2d at 588 (trial court entered summary judgment for plaintiffs as to one of two subclasses only). The case at bar is not a class action, nor did plaintiffs prevail on any claim at trial.

losing party, but rather by the prevailing party out of the recovered damages. *Bowles v. Washington Dep't of Retirement Sys.*, 847 P.2d 440, 449 (Wash. 1993). Where a lawsuit has successfully created a "common fund," the court may allow plaintiffs' attorney's fees to be paid out of that fund, with the result that each plaintiff's proportional share of the recovery is reduced. *Baksinski v. Northwestern Univ.*, 595 N.E.2d 1106, 1110 (Ill. Ct. App. 1992). Here, however, there were no damages recovered.

There are cases that permit an award of attorney's fees even though no money damages were in fact recovered or recoverable. Such cases apply the "substantial benefits" principle, which is an extension of the common fund doctrine. *Braude v. Automobile Club of S. Cal.*, 223 Cal. Rptr. 914, 920 (Ct. App. 1986). Nonetheless, the fundamental requirement for such an award is that plaintiffs prevail on one or more claims against defendants. *Carroll*, 213 Cal. Rptr. at 314. Indeed, in the case relied on by the trial court to support its award, *Mooney v. City of Laconia*, 573 A.2d 447 (N.H. 1990), the New Hampshire court awarded plaintiff attorney's fees under a "substantial benefit" theory *after* granting plaintiff's motion for summary judgment. *Id.* at 449–50. Thus, the plaintiff had prevailed as a matter of law.

Vermont has not recognized the "common fund" exception, and we see no reason to do so today. Although the trial court characterized plaintiffs' lawsuit as "meritorious," the court nonetheless rendered judgment for defendants on all counts. Moreover, the court's order to provide a refund mechanism for unexpended impact fees did not create a "common fund" in the classic sense. The order merely provided an incentive to the Town to expend revenues generated by the Plant Impact Fee within six years. In any event, any benefits accruing to plaintiffs or to others similarly situated "are not actual or concrete but are potential, conceptual, intangible and doctrinal in nature." *Braude*, 223 Cal. Rptr. at 923. We hold that an award of attorney's fees under these circumstances is not warranted under Vermont law. Plaintiffs must bear their own litigation expenses in this matter.

*The award of attorney's fees to plaintiffs is reversed. In all other respects, the judgment of the superior court is affirmed.*