STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re Svendsen Dock Extension Variance | } | Docket No. 1-1-09 Vtec |
| | } | |

## Decision on Cross-Motions for Summary Judgment

This appeal concerns the efforts of Rob Svendsen ("Appellant") to expand the water-borne docks off of his lakeshore property at 132 Bridge Street in the Town of North Hero. In pursuit of his efforts to seek authority to expand his boating docks in Lake Champlain, Appellant filed an application with the Town of North Hero Development Review Board ("DRB"). When the DRB denied Mr. Svendsen's application for conditional use approval, which sought permission to increase the number of berths available on his boating docks in the Lake waters, he filed a timely appeal with this Court.

Appellant-Svendsen is represented by Attorney Michael Brow; the Town of North Hero ("Town") is represented by Mr. Paul Gillies. Both parties have moved for summary judgment.

## Factual & Procedural Background

For the purpose of putting the pending motions in context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1.      In July, 2007, Appellant purchased property on the shores of Lake Champlain in the Town of North Hero. The 2.38-acre, L-shaped lot contains a marina store and repair shop, a boat-storage barn, and parking and staging areas for boat launching. The parcel includes 244 feet of frontage along the Lake shore.

2.      The marina currently hosts 28 water-born docking berths, 4 of which are tie-ups for transient boat service.

3.      Appellant's land falls within the Shoreland Zoning District, which consists of "all land from the low-water mark of Lake Champlain (elevation 92.50 feet) inland for a distance of five hundred (500.00) feet." Town of North Hero Zoning Bylaws art. II, § 230 (2006) [hereinafter Town Bylaws]. As a marina in the Shoreland District, the property is subject to § 456 of the Town Bylaws, which explains as follows:

> Marinas and yacht clubs . . . require a shoreline of not less than one hundred (100.00) feet, which entitles them to a total of ten (10) moorings and/or docking berths. For each additional ten (10.00) feet of shoreline, one (1) additional mooring or docking berth may be permitted by conditional use.

Town Bylaws art. IV, § 456(B).

4. Appellant filed two separate applications concerning his plans to improve the existing marina, repair shop, and related facilities on both his land and in the adjoining waters of Lake Champlain.[1] Appellant's first application, which as revised sought permission to make only the land-based improvements to his property, was approved by the DRB on September 11, 2008. Those land-based improvements included: (a) building a travel lift for boats; (b) extending an existing retaining wall; (c) expanding the wastewater pump-out tank; (d) constructing gasoline-storage and sales facilities; (e) replacing the old marina store; (f) adding another public bathroom; (g) providing dumpsters for waste disposal and recycling; (h) building a new marine repair shop; (i) expanding the boat storage and parking area; (j) increasing available parking spaces to a total of 80 spaces, 20 of which will accommodate vehicles with boat trailers; and (k) improving area signs. Application No. 2008-60-DRB, Report of Decision, ¶¶ 11–23 (North Hero Dev. Review Bd. Sept. 11, 2008).

5. Appellant subsequently submitted a second application concerning his water-based improvements, which requested a variance from the dock limitations contained in Town Bylaws § 456(B). Initially, Appellant sought a variance to allow for forty-three additional berths on his proposed dock extension, but has since reduced his request to forty-one additional berths. In order to lawfully maintain the proposed 69 total berths (i.e., existing and proposed) on the existing 244 feet of shoreline, Appellant applied to the DRB on October 14, 2008, for a Variance for a Conditioned Use.[2]

6. The Development Review Board conducted a hearing on Appellant's variance request on November 13, 2008. When the DRB denied Appellant's variance request, as reflected in the DRB Decision of December 5, 2008, Appellant filed a timely appeal to this Court.

---

[1] Appellant initially sought conditional use approval for a number of improvements to his newly acquired property, including an expansion of the docks in Lake Champlain. On September 11, 2008, the DRB approved all the land-based improvements to Appellant's property. See Application No. 2008-60-DRB, Report of Decision (North Hero Dev. Review Bd. Sept. 11, 2008), a copy of which Appellant submitted as Attachment B to his motion for summary judgment.

When it became apparent that the DRB was not likely to approve Appellant's request for authority to expand his docks on Lake Champlain, he withdrew that portion of his original application and submitted a second application. That second application requested a variance from the docking limits of Town Bylaws § 456(B).

[2] Appellant's marina already has more docking berths than the twenty-four allowed under § 456(B), but the four extra berths predate the Town Bylaws' February, 1972 adoption. We therefore regard these four extra berths as lawfully preexisting nonconformities.

**Discussion**

The parties have presented the Court with cross-motions for summary judgment. Appellant argues that Town Bylaws § 456(B) is an invalid attempt to regulate activities and development on the waters of Lake Champlain. He contends that the public waters in which his docks lie are beyond the purview of the Town's statutory zoning power.[3] The Town disputes Appellant's assertion and maintains that § 456(B) is an appropriate way to minimize the impacts on Town land that necessarily flow from increased marina traffic.

Our review of each party's pending motion must begin with the reminder that summary judgment is appropriate only "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." V.R.C.P. 56(c). "When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). We review the pending cross motions accordingly.

The ability to regulate land use through zoning is a powerful authority. Zoning laws are a direct derogation of an individual owner's common law property rights because they limit private property use. In re Richards, 174 Vt. 416, 422 (2002) (citing Kalakowski v. Town of Clarendon, 139 Vt. 519, 522 (1981)). The Vermont Legislature has expressly delegated to municipalities the power to adopt zoning bylaws related to public health, safety, or welfare. 24 V.S.A. § 4411(a). Municipal zoning bylaws are even afforded a presumption of validity. Galanes v. Town of Brattleboro, 136 Vt. 235, 240 (1978).

The municipal zoning authority is not limitless, however. In fact, Vermont municipalities have "only those powers and functions expressly granted to [them] by the legislature." Robes v. Town of Hartford, 161 Vt. 187, 190 (1993) (citing Bryant v. Town of Essex, 152 Vt. 29, 36–37 (1989)). Even further, municipal acts are construed strictly and resolved against the municipality where there exists any fair or reasonable doubt about the municipality's authority to act. Robes, 161 Vt. at 190 (citing In re Ball Mountain Dam Hydroelectric Project, 154 Vt. 189, 192 (1990)).

---

[3] Appellant also claims that his proposal meets the five criteria necessary to qualify for a variance. Because we conclude that the Town Bylaw is invalid, we need not address this argument.

With these principles in mind, we first examine the Legislature's delegation of authority to regulate land uses and development, focusing on a town's zoning authority over shorelands. According to statute, Vermont municipalities have the authority to identify "specific uses of land and shoreland facilities" and to regulate use and development in shoreland districts via zoning bylaws. 24 V.S.A. §§ 4411(a), 4424(1). The term "shorelands" is not defined in the portions of Title 24 that concern municipal and regional planning and development (i.e., chapter 117), but a definition is provided in Title 10, specifically in chapter 49 relating to the protection of navigable waters and shorelands within our State: "Shorelands" are defined as "the lands being between the normal mean water mark of a lake . . . and a line not less than five-hundred feet nor more than one-thousand feet [inland] from such mean water mark." 10 V.S.A. § 1422(8).

Through its statutory delegation, the Legislature has expressly limited the range of regulations a town may enact in a shoreland district. Permissible regulations include only those designed to control water pollution, protect aquatic wildlife habitat, conserve scenic beauty, minimize erosion, reserve access to public waters, regulate sanitary facilities, control building location, and achieve other conservation and development objectives. 24 V.S.A. § 4414(1)(D).

Meanwhile, the State has retained several powers over shoreland regulation, declaring that it is in the public interest "to establish policies, make plans, make rules, and authorize municipal shoreland zoning bylaws for the efficient use, conservation, development and protection of the state's water resources." 10 V.S.A. § 1421. In fact, the State recommends standards and criteria intended to assist municipalities in complying with delegated shoreland authority. 10 V.S.A. §§ 1423, 1425.

Ultimately, the State's delegation of authority over shorelands is limited. Nowhere in Title 24, chapter 117, nor in any provision of Title 10, chapter 49, does the State specifically authorize municipalities to regulate beyond the mean-water mark of public waters, and into the navigable waters of the State.

This cautious approach to regulation of public waters is likely a result of the State's role as trustee over Vermont's public waters. See generally 29 V.S.A. § 401 (articulating the state policy that public waters are a public trust and shall be managed for the public good); Vt. Agency of Natural Res. v. Camp, No. E94-031, slip op. at 2 (Vt. Envtl. Ct. Jan. 15, 1996) (Wright, J.) (citing cases). "Public waters" include all navigable waters and inland streams, ponds, and flowages that are not contained in private ponds or private preserves. 10 V.S.A.

§§ 1422(4), (6). The State has expressly reserved the right to manage Vermont lakes and ponds for the public good—i.e., for the greatest benefit of the people of Vermont—and vested management authority with the Water Resources Panel ("Panel") and the Department of Environmental Conservation ("Department"). 10 V.S.A. § 1421 (authorizing the Panel to create rules governing the use of public waters); 29 V.S.A. § 401 (vesting the Department with the management of encroachments onto public waters). The State's geographic jurisdiction over public waters begins where the Town's jurisdiction ends: the shoreline boundary delineated by the mean-water level of the water body. 29 V.S.A. § 401. Any activity seaward of the shoreline is therefore subject to State regulation and not municipal regulation, unless specifically delegated.

According to statute, it is unlawful to "encroach" on public waters by building or extending boating docks and similar structures without first obtaining an encroachment permit from the Department. 29 V.S.A. § 403(a), (c). Structures on public waters are subject to both state and federal regulation: an applicant must also obtain a permit from the U.S. Army Corps of Engineers to erect any obstructions in navigable waters. 33 U.S.C. § 403; United States v. Angell, 292 F.3d 333, 337 (2d. Cir. 2002). It is clear that the state and federal governments play a major, if not exclusive, role in regulating structures on public waters.

Despite the State's role as trustee of public waters, the Vermont Legislature has provided opportunities for municipalities to participate in the regulation and management of resources associated with navigable waters and shorelands. One example is the express municipal authority to reserve access to public waters via zoning bylaws. 24 V.S.A. § 4414(1)(D). In addition, the Department must evaluate whether a particular encroachment is "consisten[t] with municipal shoreland zoning ordinances" before issuing a public-water-encroachment permit. 29 V.S.A. § 405(b). However, nowhere have we found the statutory authority for a municipality to regulate boating docks off of their lands and within public waters. At most, the provisions of chapter 11 to Title 29 vest a municipality with party status, including the right to appeal an encroachment determination when the municipality remains unsatisfied with the Department's decision. See id. § 405(a) (requiring the Department to provide the municipality written notice of a permit application and an opportunity to submit written comments).

The Legislature has also authorized the Water Resource Panel to delegate the authority to regulate water use to those municipalities abutting public waters. 10 V.S.A. § 1424(f). The

municipality must formally accept the delegation by creating bylaws for water regulation. Id. In this delegation process, if the Panel is assured, after seeking public comment, that the municipality will manage the public waters in the best interests of every citizen of our State, the Panel is empowered to adopt rules that set forth the scope of delegated municipal authority, identify the minimum requirements for municipal regulations, and describe the interaction between local, state, and federal public waters management. See e.g., Re: Petition of the Town of Colchester, Malletts Bay, Lake Champlain, Decision No. UPW-91-04, 2–3 (Mar. 31, 1993), available at http://www.state.vt.us/nrb/wrp/decisions/upw/index_1991.htm.

Against this legal backdrop, we turn to the case at hand. The Town of North Hero makes two arguments with respect to its authority to regulate Appellant's docking berths on Lake Champlain. As noted below, we find both of these arguments unavailing.

The Town's first argument relies on two provisions of the enabling statute's express language. The first authorizes a town to regulate shoreland marinas, and the second authorizes it to reserve access to public waters. See 24 V.S.A. § 4411(a)(1) (stating that zoning bylaws may regulate "[s]pecific uses of land and shoreland facilities"); 24 V.S.A. § 4414(1)(D) (stating that shoreland bylaws may "require provisions for access to public waters for all residents and owners of the development"). According to the Town, not only is limiting Appellant's docking berths a valid attempt to regulate Appellant's marina and manage access to public waters, but it is also a necessary first-step intended to thwart the ultimate impact on Town land.[4] The Town contends that additional docking berths will lead to increased use by boaters; more boaters will require more marina services; and more marina services will result in a greater burden on the Town's Shoreland District.

While it is true that the Town is statutorily authorized to regulate shoreland use and reserve access to public waters, the Town's rationale does not bridge the absence of legislative authority to specifically regulate boating docks or other encroachments into public waters. The geographical limit of the Town's zoning authority is the lake and pond shorelands. 24 V.S.A. § 4414(1)(D). These areas include only the lands "between the normal mean water mark of a lake . . . and a line not less than five hundred feet . . . [inland] from such mean water mark." 10

---

[4] We find some irony in the Town's assertion that its regulation of water-borne berths is a necessary or first step,, since the record before us reveals that the DRB was satisfied with approving Appellant's proposed land-based improvements, prior to any determination on the propriety of its expansion of the water-borne docks. See Undisputed Facts at ¶4, above.

V.S.A. § 1422(8). Therefore, the Town's authority to regulate, though its zoning bylaws, terminates at the mean-water mark of Lake Champlain.[5] In fact, the Town has exerted its regulatory authority on Appellant's land and placed certain conditions upon its conditional use approval of Appellant's land-based marina development by its September 11, 2008 Decision. Application No. 2008-60-DRB, Report of Decision, Conditions I–VIII (North Hero Dev. Review Bd. Sept. 11, 2008). However, the State has reserved the right to manage public waters past the mean-water mark and into Lake Champlain. Vt. Agency of Natural Res. v. Camp, No. E94-031, slip op. at 2 (Vt. Envtl. Ct. Jan. 15, 1996) (Wright, J.). No such regulatory authority has been specifically delegated to the Town of North Hero.

Because the Town has "only those powers and functions expressly granted to it by the legislature," Robes v. Town of Hartford, 161 Vt. 187, 190 (1993), we must conclude that the Town's ability to regulate shoreland activity ends at the shoreline of Lake Champlain. Given this express geographical limit, we must also conclude that the Town's authority to reserve access to public waters terminates at the shoreline. See id. (explaining that municipal acts are construed strictly and resolved against the municipality where there exists any fair or reasonable doubt about the municipality's authority to act).[6] We therefore conclude that the Town has no zoning authority to limit the number of Appellant's docking berths seaward of the mean-water mark of Lake Champlain

The Town's second argument points to the process by which the State issues public water encroachment permits. According to the Town, whether the Department of Environmental Conservation issues an encroachment permit depends, in part, on the Town's shoreland zoning ordinances. See 29 V.S.A. § 405(b) (requiring the Department to examine "consistency with municipal shoreland zoning ordinances," among other factors, when determining an encroachment's effect on public good).

---

[5] The mean-water level of Lake Champlain, a public water according to 10 V.S.A. § 1422(4), is 95.5 feet above mean sea level. Vermont Water Resources Board, Rules for Determining Mean Water Level, Rule 1 (November 15, 1972). The Town defines shoreline as land inland from the low-water mark (92.5 feet) of Lake Champlain, Town Bylaws art II, § 230 (2006), while the State defines shoreline from the mean-water mark (95.5 feet). The three-foot discrepancy is irrelevant for the purposes of this appeal.

[6] Although we recognize that municipalities have those powers that are necessarily implied from or incident to the powers expressly granted to them by the Legislature, Robes, 161 Vt. at 190, we cannot conclude that the express power in 24 V.S.A. § 4414(1)(D) to "reserve access to public waters" authorizes the Town to regulate the number of Appellant's docking berths, especially in light of the State's express reservation of authority over encroachments in 10 V.S.A. § 403.

The Town overestimates the implication of the reference in § 405(b) to shoreland zoning bylaws. Municipal shoreland regulations clearly provide guidance and some direction to the Department, but this statutory reference does not vest regulatory authority in a town. We reach this legal conclusion for an obvious reason: § 405(b) contains no language that provides any clear authority for a town to regulate encroachments into state waters.

As the trustee of public waters, the State holds the authority and responsibility to determine how encroachments into public waters align with the greatest benefit for all of the people in our State. 10 V.S.A. § 1421. The Department is prohibited from issuing a public waters encroachment permit that adversely affects the public good. 29 V.S.A. § 403(a). When making this determination, the Department considers a number of criteria, including the encroachment's individual and cumulative effect "on water quality, fish and wildlife habitat, aquatic and shoreline vegetation, navigation and other recreational and public uses, including fishing and swimming, consistency with the natural surroundings and consistency with municipal shoreland zoning ordinances or any applicable state plans." 29 V.S.A. § 405(b) (emphasis added).

Contrary to the Town's assertion, the State's permitting decision does not depend on municipal zoning bylaws; the bylaws are merely one criterion to be considered in the State's decision-making process. Placing such significance on the Town's shoreland zoning bylaws would effectively usurp the State's power over public waters. No longer would decisions be made in the best interests of all state citizens, but rather, in conformance with local objectives.

If the Town of North Hero desires more control over permitting decisions on Lake Champlain, the Town can petition the Water Resources Panel for such authority. The Legislature has expressly provided for this option. See 29 V.S.A. § 405(f) (authorizing delegation to municipalities abutting public waters). The State has already delegated this authority to at least two Vermont municipalities. Both the Town of Colchester and the City of Newport have successfully petitioned for the authority to regulate moorings on the public waters of Lake Champlain and Lake Memphremagog, respectively. In Re: Petition Seeking the Delegation of the State Authority to Regulate the Mooring of Vessels in the Public Waters within the City of Newport, Decision No. UPW-00-01 (Water Res. Bd. Sept. 19, 2000), available at http://www.state.vt.us/nrb/wrp/decisions/upw/index_2000.htm; Re: Petition of the Town of Colchester, Malletts Bay, Lake Champlain, Decision No. UPW-91-04 (Water Res. Bd. March

31, 1993), available at http://www.state.vt.us/nrb/wrp/decisions/upw/index_1991.htm. The record before us contains no such delegation to the Town of North Hero. Without a specific delegation of the authority to regulate encroachments into state waters, we cannot uphold the authority by the Town of North Hero to regulate the number of docking berths Appellant establishes in Lake Champlain.

We therefore conclude that the Town of North Hero does not currently possess the authority to regulate or limit the number of Appellant's docking berths. Nothing in the conclusion we reach here, however, can limit the ability of the Town in the future to obtain the authority to regulate encroachments on Lake Champlain. Such authority may vest in the Town, once it causes a successful petition to be filed with the Water Resources Panel.

Short of obtaining a delegation of such authority, there are other methods of minimizing the shoreland impacts flowing from large marinas. For example, the Town can ensure that a particular marina is able to carry the burdens of additional traffic by mandating minimum lot sizes or prescribing detailed entrance and exit layouts. In fact, the Town already uses one technique to ensure that a particular property is equipped to support its marina traffic. The Town Bylaws require "[o]ne (1) [parking] space for each mooring and/or docking berth" in a marina.[7] Town Bylaws art. IV, § 438(B)(6) (2006). Such authority provided the basis for the DRB to conditionally approve Appellant's shorelands improvements in the application that preceded the variance request now before us. However, absent a specific delegation, the Town lacks authority to regulate through its zoning bylaws or otherwise the encroachment into state waters, even when such encroachment occurs adjacent to Town shorelands. We therefore conclude that the authority asserted in Town Bylaw § 456(B) lacks legal foundation, declare it void, and vacate the December 5, 2008 DRB Decision based upon it.

### Conclusion

For the foregoing reasons, it is hereby **ORDERED** and **ADJUDGED** that Appellant's Motion for Summary Judgment is **GRANTED**. The December 5, 2008 Decision by the Town of North Hero DRB, denying his variance request to increase the number of docking berths in Lake Champlain is hereby **VACATED**.

---

[7] The September 8, 2008, DRB approval of Appellant's shoreland improvements included the authority to establish eighty parking spaces on his property.

A Judgment Order accompanies this Decision.  This concludes the proceedings before this Court in this appeal.

Done at Burlington, Vermont, this 14th day of October 2009.

_____
Thomas S. Durkin, Environmental Judge