## Henry C. Hastings et al

### v.

## Village of Stowe, Electric Department

[ 214 A.2d 56 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed October 5, 1965

*Hilton H. Dier, Jr.* for the public.
*Clifton G. Parker* for the utility.

**Holden, C. J.** This is an appeal from an order of the Public Service Board. The plaintiffs are customers of the defendant's municipally owned and operated electric utility department. They instituted this proceeding by petition to the Public Service Board to investigate the reasonableness of the electric rates charged by the defendant and the conditions of service prevailing in the defendant's electric operation. After extended hearings the Board reported its findings on both aspects of the consumers' complaint.

As to service, the Board reported the defendant is a well managed and profitable operation. It found that the defendant provided reasonably adequate service to its customers, while capably meeting the steady increased demands for electric energy in the Stowe area.

In the matter of the electric rates charged by the defendant the

Public Service Board disallowed various expenses claimed by the utility as a part of its cost of service. Despite progressively increasing discounts voluntarily granted by the defendant to its customers since 1959, the Board directed the defendant to file a schedule of reduced rates and charges and ordered a refund of all sums collected after April 3, 1964 in excess of those prescribed by the Board's findings and order.

The defendant appeals. The result reached by the regulatory agency is challenged on three main points: the exclusion of certain expenditures and allowances claimed by the utility as a part of its operating costs, the failure of the Board to find or establish a rate base and the failure of the Board to specify a rate of return.

The Electric Department of the Village of Stowe serves all of that village and a major portion of the Town of Stowe. Its operation does not extend beyond the limits of the town.

The defendant has no generation facilities of its own. All of its electric energy is acquired by purchase from other sources and transmited to its customers over the defendant's distribution system. In 1963 the defendant served 224 customers within the village limits and 581 customers in the outlying town, beyond the territorial limits of the village. The electric system maintained by the defendant consists of 60.48 miles of transmission and distribution lines. Of the total, 3.44 miles are within the village limits; 57.04 miles, or 94.3%, have been constructed outside the territorial limits of the village.

In recent years the area served by the defendant has become one of the principal recreation centers in Vermont, particularly because of its skiing and other winter recreational facilities. This development has resulted in a greater than average growth in the demand for electric energy. It has also produced seasonal peak demands.

The Public Service Board found that the Stowe Electric Department had operating revenues of $161,110.99 for the year ending December 31, 1963. Against this amount the Board allowed operating expenses of $113,813.14 to produce utility operating income of $47,-297.85.

In its determination of operating expenses the Board rejected the defendant's claim for an allowance of $6,000 as management expense.

Admittedly, the defendant employs no paid managment personnel. Management is performed by the village trustees. But the defendant urges that, since the services are performed by municipal officers and employees not on the actual electric system payroll, their compensation

should be apportioned so that Stowe's cost of service may be properly charged with the value of such services.

■ The authority for the defendant municipality to engage in electric utility operations is controlled by the General Municipal Plant Enabling Act (1941, No. 147; 30 V.S.A. §§ 2901-2922). This enactment provides that a municipality may vest the construction, management, control and direction of its utility plant in a board of commissioners. 30 V.S.A. §2915. The Act also provides for compensation for these officers to be fixed by the legislative body of the municipality, 30 V.S.A. § 2917. There is no provision in the Act for compensation to be paid to the members of the legislative body of the village, as such, however dedicated they might be to the utility operation. The allowance claimed by the defendant goes beyond the statute.

By General Order No. 39, Appendix I, the Public Service Board extended the application of the Uniform System of Accounts to state and municipal licensees. These regulations provide:

"E. In order that the books of the electric department may show accurately the results of operations, the electric department shall credit the appropriate accounts with the cost of property, services, materials, supplies, use of space or equipment, etc., furnished to the municipality or any other department thereof."

Save in special circumstances, which we refer to later, cost rather than value of services is the controlling consideration. No cost was actually experienced by either the municipality or its electric department. It was well within the power of the administrative agency to disallow the defendant's claim to this item as a part of its operating expenses.

Although the defendant, as an agency of government, pays no property taxes to its parent municipality or to the Town of Stowe, the defendant claimed $1,740.72 as a tax equivalent to be included in its operating expenses for 1963. Of this amount the Board allowed $1,042.00 as a tax equivalent allocable to the Village of Stowe. It disallowed any tax allowance related to property taxes which might have been due to the Town of Stowe, save for the defendant's exemption.

■ It is clear from the findings that, as far as village taxes were concerned, the municipality suffered a detriment by way of lost taxes. The Board explained:

"We believe that a municipality should have the benefit of an amount equivalent to whatever property taxes a private utility

would pay, and we find, therefore, that these are a proper operating expense for purposes of computing its costs of service. The Village of Stowe would have received during the tax year 1963 the sum of $1,042 in property taxes had its Electric Department's utility property located within the Village been subject to taxation."

The Board regarded this as an actual expense chargeable against revenues received by the defendant.

■ While the Town of Stowe suffered a similar loss of tax revenues, no part of that burden was experienced by the Village of Stowe or its electric department. Accordingly, it was not an actual cost within the accounting system prescribed by General Order No. 39. The Board had adequate and legal reason to exclude the claim since it was never experienced as an actual operating expense and was in no way chargeable to the defendant.

■ Similar considerations dictated the Board's rejection of the defendant's claim to an allowance of $15,106 for 1963 federal income and state corporate franchise taxes. By reason of its exemption no such taxes have ever been actually paid by the electric department and the Board concluded that they were not proper allowances to be charged against the cost of service.

■ To proliferate a utility's true operating expense by the introduction of illusory charges never actually experienced would impair the regulatory process. In the absence of express statutory approval, tax benefits accruing to an operating utility are not to be translated into costs of service to the detriment of the consumer in a public service enterprise. *El Paso Natural Gas Co.* v. *Federal Power Commission,* 281 F.2d. 567, 571.

The Stowe Electric Departmet uses a part of a building owned by the village for warehousing materials and supplies. The Board found that the municipality has never been compensated by the electric department for the use of this space. The defendant claimed $1,200 for warehouse rental as an operating expense and presented evidence to this effect through its witness Prahl, a certified public accountant.

Again relying on the fact that no actual funds had been disbursed for the use of this space by the electric department to the village, the Board concluded the charge was not a proper item to be included in the cost of service.

■ This claim stands differently from the management charge and

taxes assignable to foreign taxing authorities. Here the village furnished the space, and to that extent, it suffered a loss of use.

General Order No. 39, Appendix I (H) specifies that in order to make possible an accurate determination of the results of operations of the electric department certain applicable items will be charged, whether or not they represent actual payments.

"Thus if an office of an electric department is located in a general municipal building and if no rent is paid to the municipality for such space, the appropriate account for such rent shall be debited with an equitable amount ... ."

Since the disallowance of this charge was inconsistent with the Uniform System of Accounts prescribed for the defendant, the Board's decision in this respect was in error. Moreover, the order appealed from, in Paragraph C, specifically directs the defendant to maintain its accounting in accordance with General Order No. 39.

We turn now to the questions relating to the rate base and rate of return. The Public Service Board determined in Finding No. 32 that for the year ending December 31, 1963 the net utility plant of the Village of Stowe Electric Department was $335,062. Of this amount part of the plant, valued at $83,765, was located within the territorial limits of the Village of Stowe. The remainder, representing $251,296, was located in the Town of Stowe but outside the village boundaries.

The defendant complains because the Public Service Board did not establish a rate base or specify a rate of return which the defendant is entitled to receive by way of earnings. The defendant claims this deficiency constituted substantial error.

It is well established in our cases that inquiry by the Public Service Board into the justness and reasonableness of rates charged by a privately owned public service corporation involves four basic factors: (1) gross revenues, (2) operating expenses, (3) rate base — the net value of the plant in service upon which a return should be earned, (4) the rate of return. *Petition of New England Tel. & Tel. Co.,* 115 Vt. 494, 498, 66 A.2d 135; *Petition of New England Tel. & Tel. Co.,* 120 Vt. 181, 190, 136 A.2d 357; *Letourneau* v. *Citizens Utilities Company,* 125 Vt. 38, 48, 209 A.2d 307.

The findings upon which the present order is based contain each of these constituent elements. The Board found the defendant's total electric operating revenues for the year ending December 31, 1963 were $161,110.99. Operating expenses for the same period were found to be $113,813.14. The finding that the defendant's net utility plant

in service at the end of 1963 in the amount of $335,062 establishes the rate base. While the rate of return was not expressed in those exact words, the finding of the utility operating income in the amount of $47,297.85 when applied to the net plant in service indicates the defendant enjoyed an exceptionally high rate of return for 1963. Adding to the utility plant in service as found by the Board, working capital and inventory in the full amount requested by the defendant of $112,-565, it appears the defendant enjoyed a rate of return for that year which exceeded 10%.

The defendant, as a municipally owned and operated utility, stands somewhat differently than a privately owned public service enterprise. This has an important bearing on the cost of its capital. This, in turn, affects the rate of return to which the defendant is entitled to earn on its plant in service. See *Petition of New England Tel. & Tel. Co.* 116 Vt. 480, 502, 80 A.2d 671. Generally, the municipally owned utility has no cost of equity capital to satisfy from the net earnings produced by its plant in service other than in the municipal bond market. Its rate of return is not called upon to compete for private investment. The history of the defendant's financial operation in recent years indicates that its capital improvements have been financed exclusively by way of earnings and debt capital.

Where the private investor is involved the rate of return must be sufficient to provide enough revenue for capital costs of the business, including service on the debt and dividends on the stock. The return to the stockholder must be commensurate with the returns on investments in other enterprises having corresponding risks and the return must be sufficient to assure confidence in the financial integrity of the enterprise so as to maintain its credit and attract new capital. *Petition of New England Tel. & Tel. Co.*, supra, 115 Vt. at 513; *Petition of Central Vermont Public Service Corporation*, supra, 116 Vt. 216.

The profit motive was not the underlying purpose in the enactment of the General Municipal Plant Enabling Act. Rather it was to fulfill a public need for electric service at economic rates, often in communities not served by private enterprise. See Barnes Economics of Public Utility Regulation, Page 821.

In determining the net earnings to which the defendant was entitled the Public Service Board did not confine the electric department to 1963 operating revenues. It forecast its 1966 debt burden, composed of interest and amortization demands in the amount of $14,481.91. Beyond this it anticipated the defendant's need for additional revenues

of $15,000 to "provide for possible variations in the defendant's electric operations in the immediate future."

Accordingly, the Board ordered the defendant to file a schedule of rates to produce an amount equal to 1963 revenues of $113,813. In addition to this income, further revenues were allowed to meet the cost of debt service requirements of $29,481, plus an additional $15,000 annually to provide for contingencies arising from variations in Stowe's electric operations.

In determining the earnings to which the defendant was entitled, it is clear the regulatory agency was mindful of the financial need of the enterprise. It does not appear from the Board's report whether or not an allowance for working capital was included in the computation of the net utility plant in service, to make it a part of the rate base. The defendant contends the Board "appears to ignore the item entirely."

The purpose of an allowance for working capital is to compensate for funds which investors have contributed to enable the company to operate efficiently and economically and have resources available to meet emergency conditions. See Barnes, Economics of Public Utility Regulation, supra, Page 496.

In view of the revenues granted to the defendant, over and above its 1963 experience, particularly as to the amount provided for variations in the defendant's operation, we are not prepared to say that the exclusion of working capital, if such there was, prejudiced the defendant's rights.

On this particular aspect of the case, counsel for the public challenges that part of the order which provides the additional sum of $15,000 to take care of contingencies. The plaintiff's claim of error is equally deficient in that they have failed to demonstrate that this allowance of additional revenues is not necessary to the defendant's operation. The Public Service Board reported that this income is necessary because of the defendant's low load factor and high purchase power requirements in the Stowe area.

■ We will not interfere with its informed judgment in making this adjustment, particularly in view of the absence of any showing by either side to the controversy that they have been prejudicially affected. *Central Vermont Public Service Corporation,* supra, 116 Vt. at 217; *Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio,* 301 U.S. 292, 81 L.Ed. 1093, 1101.

Lastly, the defendant challenges that portion of the Board's order

which requires it to substantially reduce the disparity in the rates charged its consumers within the village limits and those imposed on users of the electric service who reside outside. This aspect of the order recognizes that electric users within the village are entitled to more favorable rates than those in the outlying towns, and rightly so.

■ A municipality operating an electric utility which serves outside customers may charge them higher rates than those charged within the corporate limits. This differential is justified for two reasons. The cost of providing service outside the village would normally be higher. Then, too, the resident taxpayers in the village are entitled to some consideration for the risks assumed by their municipal government in undertaking the enterprise to which their credit is pledged. They bear the burden of the risk of corporate liability, fire and calamity, which are not assumed by the consumers served outside the village. *Customers of Electricity* v. *Boonville* (1934 N.Y.P.S.C.) 5 P.U.R. (NS) 298; 12 McQuillin, Municipal Corporations § 35.37. See, also, *Boonville* v. *Maltbie*, 272 N.Y. 40, 4 N.E. 2d 209.

The residents of the village constitute the source of the defendant's original investment. It would be unfair to require these rate payers to contribute to the capital investment and pay a rate of return on their own investment equal to that imposed upon outsiders who did not participate in the establishment of the enterprise. *Towle* v. *Salem* 13 P.U.R. (NS) 507, 511.

While some disparity in these two classes of rate payers is equitable, a municipally owned utility should not impose unreasonably high rates to gain revenues for strictly governmental, as distinguished from proprietary, operations. And the defendant's electric department should not be called upon to do service as a taxing authority. This was not the purpose of the Enabling statute, either in its express language or by implication. 30 V.S.A. §§ 2901 et seq.

The Public Service Board determined that the defendant's electric department contributed an average of $15,300 annually to the general expense of the village. This constituted 60% of the village budget during the period 1957 through 1963. This factor alone is some justification for the Board's order that the prevailing disparity between rates imposed, within and outside the village, should be reduced. The extent of the reduction was not specified. This was properly left to the defendant in the preparation of the revised schedule of rates, but subject to the Board's final approval in subsequent proceedings. In this there was no error.

 The record presented for our review in this appeal makes it manifest that the regulatory agency gave thorough and thoughtful consideration to the conflicting interests of the consumer and the operating utility. The needs of financing an expanding plant, the requirements of the cost of capital and the financial soundness of the defendant's operation were examined and reported in the findings. In so doing the Board acted within the restraints imposed by statute and our decisions in prior cases. In reaching the result expressed in the order the Public Service Board was not bound to any particular formula. It was free, within its delegated power, to make such adjustments and forecasts as the particular circumstances presented in the evidence required. *Central Vermont Public Service Corp.*, supra, 116 Vt. at 209; *Federal Power Commission* v. *Natural Gas Pipeline Co.* 315 U.S. 575, 586.

Except for the exclusion of an expense allowance for defendant's use of the village warehouse, referred to above, no error appears. Since this adjustment can be accomplished at the time revised rate schedules are filed, there is no need to upset the present order.

*The order of the Public Service Board dated January 28, 1965 is affirmed. Let the result be certified.*