## Petition of Ball Mountain Dam Hydroelectric Project

[576 A.2d 124]

No. 88-158

Present: Allen, C.J., Peck, Dooley and Morse, JJ., and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed April 13, 1990

*Jon S. Readnour* of *Carroll, George & Pratt,* Rutland, for Plaintiffs-Appellants.

*Donald L. Rushford* and *Morris L. Silver,* Rutland, for Defendant-Appellee CVPS.

*James Volz,* Montpelier, for Defendant-Appellee Department of Public Service.

**Morse, J.** Appellants are the towns of Londonderry, Windham, Wardsboro, Newfane and Dummerston. They appeal a decision by the Public Service Board that, as a union municipal district, they do not possess the requisite authority to finance, construct, own and operate a qualifying small power production facility. We affirm the Board's decision.

Appellants propose to establish themselves as a union municipal district under 24 V.S.A. chapter 121 to create the Ball Mountain Hydroelectric Project. The proposed power generation project would be located at the site of the existing Ball Mountain Dam on the West River in Jamaica, Vermont. The existing dam is currently managed by the United States Army Corps of Engineers but has no present energy generation capacity. Appellants wish to sell the electrical power generated by the Dam through the Vermont Power Exchange, Inc. (VPX) to

retail electric utility companies under Vermont Public Service Board Rule 4.100.

The project would be a "qualifying small power production facility" under the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. §§ 791a–828c (1976 & Supp. V 1981), and would generally be exempt from state regulation. It must, nonetheless, receive approval from the Board for the power purchase agreement to be executed with VPX. Pursuant to Board Rule 4.100, appellants signed a letter of intent with VPX and submitted the proper applications for Board approval. See Rule 4.104(A).

The Board withheld approval of the project and concluded that "the Applicant Towns are without authority to act as small power producers . . . and that development of Ball Mountain Dam by the Towns under any scheme other than as part of a regulated municipal utility is *ultra vires*."

The sole issue before us is whether appellants may, as a union municipal district, finance, construct, own and operate a qualifying small power production facility and sell power through the VPX to Vermont retail electric utility companies. The governing law is the General Municipal Plant Enabling Act, 30 V.S.A. § 2902, which states in relevant part:

> [A] municipality [or union municipal district, see 24 V.S.A. § 4866(7)] may buy and sell electric current for domestic use and for commercial purposes and construct, purchase or lease, and maintain and operate one or more plants for the manufacture, distribution, purchase and sale of . . . electricity for the use of such municipality and for the use of the residents of such municipality and for such other customers outside such municipality as the [public service] board may approve . . . .

Appellants, reading the "and's" as disjunctive rather than conjunctive, argue that the plain meaning of § 2902 provides them with the requisite authority because "an entity need not exercise all of its powers before it can exercise any one."

The law was intended to allow municipalities "to fulfill a public need for electric service at economic rates." *Hastings v. Village of Stowe*, 125 Vt. 227, 233, 214 A.2d 56, 61 (1965). "The

profit motive was *not* the underlying purpose . . . of the General Municipal Plant Enabling Act." *Id.* at 233, 214 A.2d at 61 (emphasis added). A necessary subordinate purpose is to allow municipalities to sell surplus power to nonresidents at a profit. See *Valcour v. Village of Morrisville,* 104 Vt. 119, 131–32, 158 A. 83, 86 (1932); *Hastings,* 125 Vt. at 235, 214 A.2d at 62. Thus, the Act specifically authorizes municipalities to dispose of surplus power, if any, to "*other* customers outside" the municipality. 30 V.S.A. § 2902(a) (emphasis added). The Act, therefore, does not provide for the exclusive sale of electricity to customers outside the municipality.

 We have consistently adhered to the so-called Dillon's rule that "a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof." *Hinesburg Sand & Gravel Co. v. Town of Hinesburg,* 135 Vt. 484, 486, 380 A.2d 64, 66 (1977). Dillon's rule calls for a strict construction of municipal function: "[I]f any fair, reasonable, substantial doubt exists concerning this question it must be resolved against the [grant of power]." *Valcour,* 104 Vt. at 130, 158 A. at 86.

In *Hinesburg Sand & Gravel,* we found that the sale to other municipalities of seven-eighths of the gravel produced in the defendant's gravel pit was not a power incidental to that granted by the legislature to keep highways in repair. 135 Vt. at 486, 380 A.2d at 66. Instead, defendant principally conducted a private business operation in direct competition with plaintiff, a private corporation that sold sand and gravel to the general public. The defendant's activity was purportedly transacted for a "'public purpose . . . [but in fact was] set up as a mere pretext to conceal a private purpose' [and as such] was illegal." *Id.* (quoting *Bates v. Bassett,* 60 Vt. 530, 536, 15 A. 200, 202 (1888)).

██ Appellants contend that in the area of public utility operation there is clearly no legislative concern regarding municipal competition with private companies. We disagree. The language of § 2902 suggests that the legislature did not intend municipalities to generate and sell power to customers outside

their borders irrespective of the need for the power within their borders. Section 2902 requires a municipality in good faith to serve "customers outside such municipality" only after it has served itself and its residents.

■ Appellants concede that they intend to sell the power they generate only to VPX which, in turn, will sell it to Vermont retail electric utility companies. They have no intention of offering the power to the municipalities themselves or their residents. Accordingly, they pursue this venture with a purely profitmaking motive to raise revenues for municipal uses. A "fair, reasonable, substantial doubt exists concerning the question," and we cannot perform a legislative function and grant this authority no matter how good a revenue raising and environmental idea we find the Ball Mountain Hydroelectric Project to be.

*Affirmed.*