### Samuel Conn, et al. v. Middlebury Union High School District #3

[648 A.2d 1385]

No. 93-420

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed September 2, 1994

*Gerard F. Trudeau,* Middlebury, for Plaintiffs-Appellants.

*Richard G. English* of *Powers, English & Carroll, Ltd.,* Middlebury, for Defendant-Appellee.

*Julian R. Goodrich* of *Goodrich & Rice* and *John A. Nelson,* Montpelier, for Amicus Curiae Vermont School Boards Association.

**Johnson, J.** Plaintiffs appeal from a superior court decision, which concluded that defendant Middlebury Union High School District #3 was authorized to borrow money for a period exceeding one year without following the procedure set forth in 24 V.S.A. §§ 1751–1785 to obtain bond approval. We hold that the school district had no authority to borrow money beyond one year without a bond vote and, therefore, reverse.

On May 18, 1993, the district school board decided to call a special meeting of the district electorate to obtain authorization to borrow $180,000 for a period not to exceed five years, to construct a building for high school vocational training. It also decided to request approval to borrow $90,000 for a five-year period, to prepare plans for another new building. The special meeting was scheduled for June 29, 1993, and warnings were issued according to notice requirements. One week prior to the meeting, the school district sent an informational letter with a copy of the warning to each voter in the district. A

majority of voters present at the June 29 meeting approved both articles by floor vote.

On July 2, 1993, plaintiffs filed a petition requesting that the superior court enjoin defendant from borrowing the $270,000 and set a date for a bond vote on the two articles to proceed by Australian ballot as required by 24 V.S.A. § 1758. Plaintiffs maintained that the floor vote at the June 29 meeting was inadequate to authorize the school district to borrow money for a period longer than one year, and that the school district was required to follow the statutory procedures for bond approval set out at 24 V.S.A. §§ 1751–1785. Plaintiffs also argued that the board improperly influenced the vote, in violation of 17 V.S.A. § 2666, by sending an informational letter about the proposed school construction to each voter in the district, and that the board exceeded its authority by spending district funds to send the letter.

Defendant maintained that the June 29 vote was a valid exercise of the general borrowing power pursuant to 24 V.S.A. § 1788. It denied any improper influence on the vote and contended that the letter sent to voters merely provided information regarding the two articles. The superior court rejected defendant's argument that 24 V.S.A. § 1788 authorized the June 29 floor vote, but found that the vote was a valid exercise of power under 16 V.S.A. § 562(9) because payments on the notes could be made with anticipated annual revenues. The court also concluded that the letter sent to voters did not violate 17 V.S.A. § 2666 but, rather, was authorized conduct in furtherance of the duty to protect and maintain the assets of the district. Consequently, the court denied plaintiffs' petition, and plaintiffs appealed.

## I.

The principal issue for decision is whether a school district has express or implied power to borrow money for longer than one year without complying with the bond statute. See 24 V.S.A. §§ 1751–1785. Plaintiffs argue that the floor vote was inadequate to authorize the school district to borrow money for the school improvements. They maintain that to borrow money for a period exceeding one year, the school district must obtain bond approval, and that under the bond statute, the vote must be held by Australian ballot. See 24 V.S.A. § 1758 (vote on issuing bonds "shall be by Australian ballot").

A school district is defined as a municipal corporation. See 24 V.S.A. § 1751(1). We have held that a municipality possesses only

those powers or rights expressly granted to it by the Legislature, those fairly implied because necessary to carry the latter into effect, and those essential to the declared purposes of the municipality. *Robes v. Town of Hartford*, 161 Vt. 187, 190, 636 A.2d 342, 345 (1993). Moreover, we construe the municipal function strictly. *In re Ball Mountain Dam Hydroelectric Project*, 154 Vt. 189, 192, 576 A.2d 124, 126 (1990). Any "fair, reasonable, substantial doubt" regarding the power of a municipality will be resolved against the grant of such power. *Id.* (quoting *Valcour v. Village of Morrisville*, 104 Vt. 119, 130, 158 A. 83, 86 (1932)).

Defendant contends that school districts may borrow money, for a term longer than a year, either pursuant to the bond statute or pursuant to the general municipal borrowing power. It maintains that the June 29 vote was a valid exercise of the general borrowing power and finds support for that power in several sources. Defendant first claims that 24 V.S.A. § 1788 grants municipalities general borrowing power, or at least recognizes such power. Section 1788 provides in part:

> The *existing power of a municipality* to authorize public improvements by a majority vote in a meeting duly called and held and to finance the same temporarily by the issue of orders or notes, and to issue bonds therefor, is not repealed nor affected by the provisions of this subchapter.

24 V.S.A. § 1788 (emphasis added). Plaintiffs counter that the "existing power of a municipality" referred to in § 1788 is the power expressly granted to a municipal corporation by its charter provisions or by special act of the Legislature. They maintain that a municipal corporation has no general borrowing authority absent a specific grant by charter or special act.

■■ "Our primary objective in construing a statute is to effectuate the intent of the Legislature." *Bisson v. Ward*, 160 Vt. 343, 348, 628 A.2d 1256, 1260 (1993). Generally, we rely on the plain meaning of words because we presume that it shows that intent. *Id.* In the instant case, the language at issue cannot be construed, on its face, to be a grant of power. The statute refers to "existing" powers, which ordinarily means the powers are granted elsewhere or exist apart from the statute at issue. Strictly construing the powers of the school district, we conclude that there is no express grant of power in § 1788. Defendant maintains, nonetheless, that the Legislature "recognized" a general borrowing power in § 1788. We disagree.

The statutory history of § 1788 supports plaintiffs' construction of the statute. In 1917, the Legislature enacted the first general law granting all municipalities the authority to issue bonds to fund public improvements, provided two-thirds of the voters at a duly called meeting approved. See 1917, No. 105, §§ 3–5. Although this law was comprehensive in regulating the procedure for voting on and issuing municipal bonds, the Legislature also provided: "This act shall not affect rights now allowed any municipal corporation by its charter provisions, nor any rights now or hereafter granted by special act of the legislature." *Id.* § 29. Thus, the general law applied to all municipal bonding, except where its requirements conflicted with the procedure set forth by charter or special act. *E.B. & A.C. Whiting Co. v. City of Burlington*, 106 Vt. 446, 454, 175 A. 35, 39 (1934). This reservation of rights was codified as § 4103 of the General Laws of 1917 and titled "Charters and special acts control." See 1917 G.L. § 4103.

The Legislature amended G.L. § 4103 in 1925 by adding the "existing powers" language, which is now, with a few editorial changes, 24 V.S.A. § 1788. See 1925, No. 60, § 9. Subsequently, in 1933, the Commissioners on the Revision of the Laws divided § 4103 into two separate sections. The original 1917 language, reserving rights granted by charter or special act, and the 1925 amendment, reserving the "existing power" to authorize and finance public improvements, were codified in separate sections, and with some minor amendments, are now set forth as 24 V.S.A. § 1787 and § 1788. See Vermont Comm'rs on the Revision of the Laws, Report Upon the Revision of the Laws (proposed revision) 240 (1933) (dividing G.L. § 4103 into P.L. §§ 3386 and 3387); P.L. §§ 3386–3387 (proposed revision).

Thus, in construing § 1788 of the general bonding statute, we are mindful that it was originally an amendment to § 1787, which reserves to municipalities rights granted by charters and special acts of the Legislature. In this light, § 1788 must be regarded as simply detailing those reserved powers, such as the power to authorize a public improvement (1) by majority, rather than two-thirds, vote, and (2) by floor vote, rather than by Australian ballot. See *Whiting*, 106 Vt. at 463, 175 A. at 43–44 (bonding statute required two-thirds vote while many charters required majority vote). We presume that the statutory revision, dividing G.L. § 4103 into two sections, did not intend to change the substantive meaning of the law. See *Town of Cambridge v. Town of Underhill*, 124 Vt. 237, 240, 204 A.2d 155, 157

(1964) (presume revision is not intended to change substantive law unless clearly indicates otherwise).

In view of the origin of § 1788 and the strict construction of municipal powers, we conclude that the "existing power of a municipality" refers to the power conferred by municipal charter or special act. It does not grant any additional authority to municipalities, nor does it recognize a general borrowing power. It merely reserves powers granted to municipalities by their charters or by special act. Indeed, defendant's construction of § 1788 would authorize bonding by majority vote at a duly called meeting because § 1788 refers to the "existing power" to issue "orders or notes, and to issue bonds therefor." 24 V.S.A. § 1788. We reject the notion that the Legislature intended to include, in the chapter of comprehensive municipal bonding rules, a general power to borrow and to bond outside of this bonding scheme.

■ Alternatively, defendant maintains that it has an implied power to borrow in this instance because such power is necessary to carry into effect the power to build schoolhouses, which is expressly granted in 16 V.S.A. § 562(7) (electorate may authorize school board to erect schoolhouses). According to defendant, the power to borrow for a period exceeding one year must be implied from § 562(7) because it would be impossible to pay for constructing a school in a single year. We are not persuaded to imply the power to borrow as *necessary* to build schoolhouses. The Legislature has provided express authority to fund improvements by granting municipalities the power to borrow and bond; it has also provided the procedure by which the municipality must obtain approval from the electorate for such funding.

■ Nor are we persuaded that 16 V.S.A. § 562(9) grants voters the power to authorize the school board to borrow money for a term longer than one year, provided payments on the notes are made from annual revenue. Section 562(9) provides that the electorate may authorize the school board, at a school district meeting, "to borrow money by issuance of bonds, or notes not in excess of anticipated revenue for the school year." 16 V.S.A. § 562(9). The statute clearly states that the *notes* cannot exceed the anticipated annual revenue. There is no reason to construe "notes" in this subsection as "payments on the notes." "Where the meaning of a statute is plain on its face, this Court will enforce the statute according to its terms for 'there is no need for construction . . . .'" *Burlington Elec. Dep't v.*

*Vermont Dep't of Taxes*, 154 Vt. 332, 335–36, 576 A.2d 450, 452 (1990) (quoting *Hill v. Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983)).

Defendant contends that Vermont case law is replete with references to a general municipal borrowing power. Yet, none of the cases cited by defendant addresses the issue before us. See, e.g., *Town of New Haven v. Weston*, 87 Vt. 7, 20–22, 86 A. 996, 1002 (1913) (approving selectmen's ratification of treasurer's unauthorized borrowing, which was needed to meet current bills for town necessities); *Allen v. City of Burlington*, 45 Vt. 202, 212–13 (1873) (warning was inadequate to authorize vote, and statute prohibits voters from authorizing tax to be assessed in future years); *Blush v. Town of Colchester*, 39 Vt. 193, 196–97 (1867) (warning to raise a tax to pay for recruits was inadequate to warn a vote to borrow money to pay recruits; consequently, vote on loan was invalid). Most of the cases involve provisions in town charters or statutes that have since been repealed. We find no authority in the case law cited to validate the June 29 vote. More importantly, however, this Court does not grant powers to municipalities. Only the Legislature has the authority to grant such power.

■ Finally, defendant argues that borrowing without bonding is often more economical for smaller projects requiring loans less than twenty years; it avoids the cost of the bond issue, interest is due over a shorter period, and interest rates may even be lower. Defendant maintains that hundreds of loans to municipalities have been made and are outstanding on the authority of the "existing power" of § 1788 because municipalities recognize the fiscal benefits of multiyear loans without bonding to fund improvements.

We recognize that it may be more economical and convenient to fund some school improvements by borrowing from local banks for a period longer than one year. Despite the merits of defendant's policy arguments, it is not the function of the courts to grant powers to school districts where the Legislature has not done so. Nor are we inclined to sanction the general practice of unauthorized borrowing simply because it is widespread. Defendant's arguments are more properly addressed to the Legislature.

We conclude that there is no general municipal borrowing power in Vermont. Because defendant can point to no authority that expressly grants such a power, nor any authority under which such power would necessarily be implied, we hold that the June 29 floor vote was invalid to authorize the school district to borrow money for school improvements for a period of five years.

## II.

■ Plaintiffs contend that defendant improperly influenced the June 29 vote, in violation 17 V.S.A. § 2666, by sending voters a letter about the issues to be voted upon. Section 2666 provides: "Neither the warning, the notice, the official voter information cards, nor the ballot itself shall include any opinion or comment by any town body or officer or other person on any matter to be voted on." On appeal, plaintiffs concede that defendant did not include any opinion or comment on the warning or the ballot but suggest that spending school money to send the letter was improper. As there was no opinion or comment on any of the official documents listed in 17 V.S.A. § 2666, we conclude that neither the letter, nor the funds spent to send it, constitute improper influence under that section.

■ Plaintiffs also argue that the school board exceeded its authority by spending school revenues to send the letter. They maintain that the letter attempted to persuade voters to support the new buildings, and consequently, was an improper political expenditure pursuant to *Sargent v. Clark*, 83 Vt. 523, 77 A. 337 (1910). In *Sargent*, the Court held that a town cannot legally vote to pay expenses incurred in opposing a bill to create a new town from part of its territory. *Id.* at 526, 77 A. at 338. The Court found that, absent a specific statutory grant, the town had no corporate duty, interest or right against the state to maintain its territorial limits. *Id.* In contrast, the school district in this case has a statutory duty to locate and erect schoolhouses. See 16 V.S.A. § 3741. Sending an informational letter to voters, in this context, is a proper function of the school district. See also 16 V.S.A. § 562(8) (board shall determine how voted funds shall be expended).

*Reversed as to the validity of the June 29, 1993 floor vote; affirmed as to the authority to send and pay for the informational letter.*