### Harold and Sheila BIGELOW v. Carolyn BIGELOW

[721 A.2d 98]

No. 97-508

September 10, 1998. The maternal grandparents of two minor children each filed a relief-from-abuse petition in family court against their daughter, the mother of their grandchildren. The petitions were on behalf of themselves, and grandfather's was also on behalf of the grandchildren. In its final relief-from-abuse order, the family court awarded grandparents temporary custody of the two children. Mother claims that this award should be vacated because (1) the family court did not have jurisdiction to award grandparents custody of mother's children in an abuse-prevention proceeding, and (2) the court was without authority to appoint counsel and a guardian ad litem to represent the children's interests. Mother also appeals the denial of her request for attorney's fees. We conclude that the family court lacked jurisdiction and therefore vacate its final relief-from-abuse order.

The family court made extensive findings in this case. The pertinent facts are summarized as follows: Harold and Sheila Bigelow (grandparents) are husband and wife, the parents of defendant, Carolyn Bigelow (mother), and the grandparents of mother's two children, M.L. and M.B., ages eight and five. Mother and the chil-

dren have lived with grandparents for the last five years. When mother was unable or unwilling to care for her children, grandparents were the primary caretakers.

Mother has a demonstrated history of erratic and irrational behavior which, at times, has interfered with her ability to parent her children. Her conduct has consisted of dramatic mood swings, unusual sleeping patterns (a reversal of day and night), threatening suicide, intermittent drug use and abuse, and violent behavior directed toward grandmother.

The specific events leading to the family court's involvement began in July 1996. At that time, mother confronted grandmother and threatened to commit suicide and "take her daughter with her because no one wanted [her]." According to grandparents and confirmed by the children's therapist, mother made the same statements to the children. Concerned that mother was unable to perform her parental responsibilities, grandmother contacted the Department of Social and Rehabilitation Services (SRS). SRS advised grandmother to monitor the situation carefully and to contact the police immediately if mother made any attempt to act on her threats.

On November 6, 1996, M.B. ran to her grandmother, imploring her for protection from mother. M.B. was in an extreme state of fear and attempted to get grandmother to hide with her in a closet. She also advised grandmother that if mother found M.B. in grandmother's room, she would kill M.B. Eventually mother awoke and started screaming for M.B. Mother became increasingly belligerent and threatening. Grandmother called the police. Mother attacked grandmother, pushing her into a closet, punching her in the back, and "forcing the receiver of the telephone into her mouth," causing a cut to her lip. The police arrived at the scene shortly thereafter and took mother into custody. Mother was charged with domestic assault, which charge is still pending.

On the day of the alleged assault, grandmother again contacted SRS. Upon being told that mother had been removed from grandparent's home, SRS declined to file a petition on grounds that the children were in need of care and supervision (CHINS). SRS reasoned that the danger to the children was over because mother was no longer in the house. Grandmother then filed a relief-from-abuse petition with family court on her own behalf. Later that evening, mother called grandfather (at that time, grandparents were not living together) and threatened to take the children and leave the state. The next day, grandfather filed a relief-from-abuse petition on his own behalf and on behalf of his grandchildren.

The family court issued a temporary restraining order on November 7, 1996, granting temporary custody of the children to grandfather. On the same day, grandparents filed a motion for joint temporary custody of the children. Several days later, grandmother filed a motion to amend the TRO to give temporary custody of the children to grandparents jointly. By then, grandparents had reconciled and were living together, and they were concerned that the children maintain as much stability and continuity in their lives as possible.

The court appointed counsel and a guardian ad litem to represent the minor children's interests. The children have different fathers. The father of M.B. never appeared in the proceedings below and has not played an active role in parenting M.B. The father of M.L., Donald Letarte, who initially was represented by counsel, filed a cross-petition for custody. Subsequently, his attorney withdrew and, since that time, Mr. Letarte has not appeared in any of the proceedings below. Rather, he advised the trial court by letter that he would not cooperate and would not appear for a scheduled deposition regarding his peti-tion. Subsequently, grandmother filed a motion to dismiss his claim; the motion went unopposed and ultimately was granted.

In December 1996, mother, who by then was represented by counsel, filed a motion to dismiss based on lack of jurisdiction. She alleged that grandparents did not have standing to file a relief-from-abuse petition on behalf of her minor children. The motion to dismiss was denied. Mother's attorney filed a motion to withdraw in February 1997. Mother was given thirty days to hire new counsel or proceed pro se. A contested merits hearing was held in June 1997. All parties were present and represented by counsel except mother, who appeared pro se. The court issued a final relief-from-abuse order in which it found that mother was unfit to parent her children properly. It also found that mother's actions, especially since July 1996, amounted to emotional abuse of the children.

Accordingly, the court granted temporary custody of the children to grandparents until such time as mother is able to prove to the court that she is fit to parent her children. Mother was awarded supervised visits. The order states that it shall remain in effect for one year, but may be extended upon motion.

Mother did not appeal the family court's final relief-from-abuse order. Instead, she obtained counsel in August 1997 and immediately filed a motion under V.R.C.P. 60(b) to vacate the order. Mother requested that the order should be set aside because, among other things, the court lacked jurisdiction. In addition, she requested attorney's fees. The court denied both requests, and it is from these denials that mother appeals.

We begin by addressing mother's contention that the family court lacked jurisdiction to adjudicate a custody dispute between herself and grandparents, as part of an abuse-prevention proceeding,

because grandfather did not have standing to file a relief-from-abuse petition on behalf of his grandchildren.*

We agree that grandfather did not have standing to file a relief-from-abuse petition on behalf of his grandchildren under Vermont's Abuse Prevention Act (APA). See 15 V.S.A. §§ 1101-1115. This conclusion is based on the plain language of 15 V.S.A. § 1103(a), which provides that "[a]ny family or household member may seek relief from abuse by another family or household member on behalf of him or herself or *his or her children* by filing a complaint under this chapter." (Emphasis added.) This language does not encompass petitions by third parties, even grandparents, on behalf of minor children. See *Conn v. Middlebury Union High Sch.*, 162 Vt. 498, 503, 648 A.2d 1385, 1388 (1994) ("Where the meaning of a statute is plain on its face, this Court will enforce the statute according to its terms . . . .") (internal quotations and citations omitted). Thus, because of grandfather's lack of standing, the family court did not have jurisdiction to make a temporary

---

*At oral argument, grandparents contended that mother's jurisdictional claims were not properly before this Court because the family court's final relief-from-abuse order dated June 25, 1997, was never appealed. While we recognize that a Rule 60(b) motion is "'not intended to function as a substitute for a timely appeal,'" *Donley v. Donley*, 165 Vt. 619, 619-20, 686 A.2d 943, 945 (1996) (quoting *Richwagen v. Richwagen*, 153 Vt. 1, 3, 568 A.2d 419, 420 (1989)), we also observe that in this case, mother was not represented by counsel at the time of the merits hearing, and did not obtain counsel until approximately two months after the final order was entered. Therefore, in light of mother's lack of representation, in addition to her alleged mental instability and the fundamental nature of the rights at stake, we conclude that justice requires us to consider her claims of error.

award of custody under the APA. Accordingly, we vacate the final relief-from-abuse order.

In addition, we agree with mother that the family court has the discretion to award attorney's fees in connection with petitions for relief from abuse. See *Mullin v. Phelps*, 162 Vt. 250, 268, 647 A.2d 714, 725 (1994) ("In proceedings dealing with motions to modify parental rights and responsibilities, the trial court may award attorney's fees in its discretion."). Thus, we instruct the family court to consider and rule on attorney's fees.

*The family court's final relief-from-abuse order is vacated, and the matter is remanded for further proceedings.*

Motion for reargument denied October 20, 1998.