STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 7-1-20 Vtec

| | |
|---|---|
| Grimaldi NOV | DECISION ON MOTIONS |

This appeal concerns Appellants Annie Christopher and Peter Backman's (together, Appellants) appeal of a Town of Calais Development Review Board (DRB) Decision regarding a Notice of Violation (NOV) for the use and location of a dock below the mean water level on Nelson Pond[1] located at 459 Rathburn Road in Woodbury, Vermont (the Property), owned by Susan Grimaldi (Grimaldi).[2]  Appellants timely appealed the DRB decision to this Court.[3]  Presently before the Court are parties' cross motions for summary judgment and Grimaldi's motion to dismiss and clarify Questions 2–4 of Appellants' Statement of Questions.  As these motions present multiple overlapping issues, we address them together in this decision.

Appellants are represented by Erick Titrud, Esq.  Grimaldi is represented by Nicholas A.E. Low, Esq.

**Legal Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2).  When considering cross-motions for summary judgment, the court considers each motion individually and gives the

---

[1] Nelson Pond is also known as "Forest Lake" and is located in East Calais, Vermont.

[2] The DRB found "that contingent upon Ms. Grimaldi submitting by June 15, 2020, documentation indicating that . . . the Vermont Department of Environmental Conservation [DEC] has officially determined that the structure is located below the mean water level, the town of Calais has no jurisdiction in this matter and therefore there is no violation of the Town of Calais Zoning regulations." See Grimaldi NOV, Decision regarding Notice of Violation, at 1 (City of Calais Dev. Rev. Bd. Dec. 11, 2019).

[3] Appellants have a related case currently pending before this Court concerning the same dock, Docket No. 53-7-20 Vtec, which is an appeal of a Vermont Department of Environmental Conservation Watershed Division (DEC) Decision issued on June 16, 2020. See In re: Grimaldi Dock Placement Determination, No. 53-7-20 Vtec (Vt. Super. Ct. Envtl. Div.) (Walsh, J.). The DEC Decision states that the dock's current location "appears to be beyond the mean water level, not impeding navigation, and meet the criteria [for exemption from a lake encroachment permit]."

opposing party the benefit of all reasonable doubts and inferences. <u>City of Burlington v. Fairpoint Commc'ns, Inc.</u>, 2009 VT 59, ¶ 5, 186 Vt. 332. In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." <u>White v. Quechee Lakes Landowners' Ass'n, Inc.</u>, 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

### Findings of Fact

We recite the following facts solely for the purpose of deciding the pending motions for summary judgment. These facts do not constitute factual findings, as factual findings cannot occur until after the Court conducts a trial. <u>Fritzeen v. Trudell Consulting Eng'rs, Inc.</u>, 170 Vt. 632, 633 (2000) (mem.).

1. On July 31, 2000, Appellants Annie Christopher and Peter Backman (together, Appellants) acquired lakefront property on Rathburn Road in Woodbury, Vermont on Nelson Pond in fee simple (the Appellants' Property). The Appellants' Property was previously owned by Mr. Coleman Parker. The Appellants' Property is located within the Shoreland District.

2. In August 2004, Susan Grimaldi (Grimaldi) purchased property located at 459 Rathburn Road in Woodbury, Vermont (the 459 Property). The 459 Property was previously owned by Ron Clark. The 459 Property is located within the Shoreland District.

3. The 459 Property has a right of way across the Appellants' Property, which grants the 459 Property access to the shoreline of Nelson pond.

4. On August 7, 2012, Appellants applied for a zoning permit to install a dock at the Appellants' Property.

5. On October 12, 2012, the Appellants' permit was approved. Thereafter, Appellants installed a dock at the Appellants' Property.

6. Grimaldi placed a dock, without prior consent of Appellants, on Appellants' property.

7. Grimaldi did not secure a zoning permit for the dock or access to the dock.

8. The Appellants' dock and Grimaldi's dock were initially situated within 10 ft. of each other.

9. In September 2014, Kevin Burke of the DEC Lakes and Ponds Program (Burke) evaluated the placement of the dock pursuant to the lake encroachment permit program. Burke notified

Grimaldi that the Grimaldi dock "is unreasonably impeding navigation on Nelson Pond . . . [and] therefore the dock as installed does not meet the permit exemption as set forth in the [lake encroachment permit program]." Burke directed Grimaldi to restore the fill surrounding the dock to its former location and either relocate the dock to the north to allow for navigation or modify the dock to a seasonal offshore raft and anchor.

10. On September 25, 2014, Grimaldi notified Burke that she intended to move the dock "to the north of the [Appellants'] dock, i.e. about half way between their dock and the one next door."

11. Between late September and early October, Grimaldi moved the Grimaldi dock out into the water and away from the shore to the North of the Appellants' dock, approximately halfway between Appellants' and a neighbor's dock to the north.

12. On September 11, 2019, the Town of Calais Zoning Administrator issued a NOV for the placement of a temporary dock within the setback and buffer areas of Nelson Pond without a zoning permit to Grimaldi.

13. On September 20, 2019, Grimaldi timely appealed the NOV to the DRB.

14. On December 11, 2019, the DRB concluded that the Town of Calais had "no jurisdiction in this matter and therefore there [was] no violation of the Town of Calais Zoning regulations."

15. On December 11, 2019, Appellants timely appealed the DRB decision to this Court.

16. On June 10, 2020, Lindsay Miller of the of the DEC Lake and Shoreland Permitting Program (Miller) conducted a site visit at the Property to determine the placement of the dock relative to the mean water mark.

17. Miller noted that the DEC has not set a mean water level for Nelson Pond.

18. Miller did not take hydraulic measurements at the site. The DEC Analyst determined that, based upon the vegetation and water line on the rocks, "the dock's current location appears to be beyond mean water level."

**Discussion**

Both the Appellants and Grimaldi move for partial summary judgment on Appellants' Question 2, raising concerns of the jurisdictional scope of authority of the Town of Calais (Town)

3

and Grimaldi's compliance with the Town's Land Use and Development Regulations (ULDR). In the alternative, Grimaldi also seeks a motion to clarify Question 2. In addition, Appellant seeks to dismiss both Question 3, on the basis that this Question constitutes an advisory opinion. We address these in order below, and Question 4, as outside this Court's jurisdiction.

## I.    Cross Motions for Partial Summary Judgment Concerning Question 2

Appellants' Question 2 asks: "[d]oes Susan Grimaldi's dock, and her use of shoreland to access it, violate the Town of Calais Land Use & Development Regulations?" Appellants' Statement of Questions filed on Jan. 29, 2020, at 1. As a threshold question, parties challenge the Town's jurisdiction to regulate the Grimaldi dock under the LUDR. Thus, we first address the scope of the Town's regulatory authority in relation to the Grimaldi dock and the mean water mark.

Grimaldi argues that as the DEC has not specifically delegated its authority to the Town, the State has exclusive authority to regulate activities in or on Nelson Pond, pursuant to 29 V.S.A. § 401. Grimaldi contends that because the Grimaldi dock is below the mean water level of Nelson Pond, it is subject only to DEC regulation and not municipal zoning regulation. Appellants counter that regardless of the dock's location, the Town has authority to regulate the Grimaldi's use of the land and may "reserve access" to public waters. Additionally, Appellants assert that the Town has authority to regulate dock placements through the Public Trust Doctrine.

It is undisputed that the State has expressly reserved the right to manage Vermont lakes and ponds for the public good. See 29 V.S.A. § 401 (stating that public waters are a public trust and shall be managed for the public good); 10 V.S.A. §§ 1421, 1422 (defining public waters as including all navigable waters, inland streams, ponds, and flowages that are not contained in private ponds or private preserves). The State's jurisdiction extends to all public waters and land lying thereunder "which lie beyond the shoreline or shorelines delineated by the mean water level of any lake or pond that is a public water of the State." 29 V.S.A. § 401 (directing the DEC to determine the mean water level). Therefore, public waters beyond the mean water level are subject to State regulation and not municipal regulation, unless specifically delegated. Here, the DEC has not delegated the authority to regulate Nelson Pond to the Town in the Vermont Use of

Public Waters Rules (VUPWR).[4]  VUPWR §§ 1.1–1.3, Appendix A (Nov. 1, 2016).  Thus, the State retains the authority to regulate the public waters of Nelson Pond.

While municipalities generally have broad authority to regulate land use through zoning, municipal authority is limited to "only those powers and functions expressly granted to [them] by the legislature."  Robes v. Town of Hartford, 161 Vt. 187, 190 (1993) (citing Bryant v. Town of Essex, 152 Vt. 29, 36–37 (1989)); 24 V.S.A. § 4411(a) (delegating to municipalities the power to adopt bylaws related to public health, safety, or welfare).  Indeed, this Court must construe municipal acts strictly, and resolve any "fair, reasonable, substantial doubt concerning the municipality's authority to act against the municipality."  Id. (citing In re Ball Mountain Dam Hydroelectric Project, 154 Vt. 189, 192 (1990)).

We therefore turn to the Legislature's delegation of authority to municipalities in regulating shorelands.  The Legislature has authorized municipalities to identify shoreland zoning districts and regulate "specific uses of lands and shoreland facilities" and "development and use along shorelands."  24 V.S.A. §§ 4411 (a)(1), 4414 (1)(D), 4424 (1). Within shoreland districts, the Town may "reserve access to public waters . . . and achieve other municipal, regional, or state shoreland conservation and development objectives."   24 V.S.A. § 4414 (1)(D) (stating that shoreland bylaws may "control building location" and "require provisions for access to public waters for all residents and owners of the development"); In re Richard Notice of Violation, No. 151-9-10 Vtec, slip op. at 7 (Vt. Super. Ct. Apr. 29, 2010) (Wright, J.) (recognizing that the Town has authority to regulate the use of shorelands within its boundaries).

In contrast to these limited powers granted to municipalities, the State retains broad authority to "to establish policies, make plans, make rules, and authorize municipal shoreland zoning bylaws for the efficient use, conservation, development and protection of the state's water resources."  10 V.S.A. § 1421; see also 29 V.S.A. § 401 (stating that it is the policy of the State that these waters and lands shall be managed to serve the public good").  Indeed, the State specifically reserves sole authority to regulate beyond the mean water mark.  In re Svendsen Dock Extension Variance, No. 1-1-09 Vtec, slip op. at 4 (Vt. Super. Ct. Oct. 14, 2009) (Durkin, J.)

---

[4]  The Legislature has authorized the Water Resource Panel to formally delegate its authority to municipalities to regulate water use abutting public waters, pursuant to 10 V.S.A. § 1424 (f).

(noting that "nowhere in Title 24, chapter 117, nor in any provision of Title 10, chapter 19, does the State delegate authority to the municipality to regulate beyond the mean water mark").

Here, the Legislature defines "shorelands" as "being between the normal mean water level of a lake, pond, or impoundment exceeding 20 acres and a line not less than 500 feet nor more than 1,000 feet from such mean water level." 10 V.S.A. § 1422 (defining public shorelands as "State-owned lands adjacent to navigable waters"). This language operates as an express geographic limitation on the Town's authority to regulate shorelands. In re Svendsen, No. 1-1-09 Vtec at 5 (Oct. 14, 2009). By this limitation, the Town's authority to regulate or reserve access to public waters "terminates at the shoreline." Id. at 7 (concluding the Town of North Hero had no authority to regulate an applicant's dock expansion project located beyond the mean water mark of Lake Champlain in public waters).

Appellants' contention that the Town has authority to "reserve access" derived from Grimaldi's right of way to beyond the mean water mark is an expansion of delegated municipal authority contrary to legislative intent. See Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61 (noting that this Court's "paramount goal" is to implement the intent of its drafters). Indeed, the Legislature has expressly directed that the state shall regulate docks or other encroachments into public waters. 29 V.S.A. § 403(a), (c) (stating that it is unlawful to encroach on public waters by building docks and similar structures without obtaining and encroachment permit from the DEC); In re Svendsen, No. 1-1-09 Vtec at 5 (Oct. 14, 2009) (remarking the legislature's decision not to specifically delegate authority to municipalities to regulate boating docks or other encroachments into public waters).

The Town has authority to regulate the use of its shorelands above the mean water mark. 24 V.S.A. §§ 4411(a)(1), 4414(1)(D). Thus, to the extent Appellants assert that the Town has authority to regulate the use of lands, structures or developments located therein, and access through such lands to public waters, this authority is limited to the shorelands. See In re Richard Notice of Violation, No. 151-9-10 Vtec at 8 (Apr. 29, 2010) (stating that while the Town lacks authority to regulate moorings or docks, it does have authority to regulate the shore-based features of the marina); see also In re Champlain Marina Dock Expansion, No. 28-2-09 Vtec, slip op. at 3 (Vt. Envtl. Ct. May 19, 2010) (Wright, J.) (stating a municipality may regulate shore-based

6

facilities that project outward from the mean water mark). Therefore, to the extent that a dock or associated structures are installed or located above the mean water mark, the Town has authority to regulate.[5] See Id. at 4 (stating that municipal regulations that are "premised upon uses or impacts specifically located on land, above the mean-water mark, and thus within the enabling authority of the Town to regulate"); see also In re Richard Notice of Violation, No. 151-9-10 Vtec at 9 (Apr. 29, 2010) (holding that municipal regulations that do not regulate use of the waters or land laying under Lake Champlain do not usurp the state's duties under the public trust doctrine).

While this clarifies the delineation of jurisdiction between the Town and the State, this Court has yet to address whether the is a genuine dispute of material fact concerning the Grimaldi dock's location as above or below the mean water mark and the DEC's designation of the mean water mark itself.

Appellants provide, through the affidavit of Annie Christopher, that Grimaldi's dock appeared on Appellants' shoreline for the first time in 2012. Appellants also note, though the use the photos taken in 2014, that Grimaldi's dock was placed in close proximity to Appellants' dock and that Grimaldi added "several large stones" to support the dock and provide access. Appellants have further included an August 11, 2015, letter from Kevin Burke of the DEC Lakes and Ponds Program (Burke) to Grimaldi that noted the placement of stones "beyond the mean water level," "additional fill including stone and remnant concrete" supporting the Grimaldi dock, and instructions directing Grimaldi to relocate the dock to the north. In a later letter, Burke again directed Grimaldi to move the dock "offshore, out beyond the mean water level, and without a constructed path through the water" so that the dock may be considered a "raft" for zoning purposes. Appellants assert, through Christopher's affidavit, that the Grimaldi dock was then

---

[5] This Court has noted that "when the *state regulation* of water-borne encroachments is premised upon consistency with a municipal regulation, . . . the validity of the municipal regulation remains at issue" and the Court must look to provisions of the municipal regulation. In re Champlain Marina Dock Expansion, No. 28-2-09 Vtec at 3 (May 19, 2010) (citing In re Svendsen, No. 1-1-09 Vtec at 4 (Oct. 14, 2009)). In the case of In re Champlain, 29 V.S.A. § 405 (b) required the state to consider whether a waterborne encroachment would adversely affect the public good by considering the effect of the proposed encroachment's "consistency with municipal shoreland ordinances." Id. (citing 29 V.S.A. § 405 (b)).

7

moved into the water and away from shore to the north, but by November 2014, Grimaldi had moved the dock back to the shoreline.

Grimaldi offers an affidavit of Ron Clark, the prior owner of the 459 Property, to support the contention that the Grimaldi dock had been continuously located on Appellants' property since July of 2000. Grimaldi also provides, through the affidavit of Susan Grimaldi, that no stones have been moved to support the dock. Grimaldi asserts that the dock was moved in 2014 to accommodate Burke's letter and since the relocation of the platform in 2014, the dock has not been moved back onto the shoreline.

Here, both parties have provided sufficient evidence, supported by affidavits, to show a genuine dispute of material fact concerning whether there were in fact stones or fill placed to support the Grimaldi dock and the location of the Grimaldi dock as on or unattached to the shoreline after 2014. These factors concerning the location of the Grimaldi dock as on the shorelands or above the mean water mark are integral to the determination of whether the dock is subject to Town or State regulations.

Concerning the mean water mark of Nelson Pond, Grimaldi has provided a June 10, 2020, letter from Lindsey Miller of the DEC Lake and Shoreland Permitting Program (Miller) as evidence, which states that the "the dock's location appears to be beyond mean water level, not impeding navigation, and meet the criteria [for a lake encroachment permit]." Grimaldi Exhibit 1 filed on Jun 25, 2020, at 1. Grimaldi also provides an additional June 23, 2020, letter from Miller stating that the DEC had not made a formal determination concerning the mean water mark for Nelson Pond and Miller had not taken hydrologic measurements at Nelson Pond when determining if the dock's location was beyond the mean water mark. Indeed, Appellants note that Miller did not follow the proper process detailed in the DEC's Rules Determining Mean Water Levels (RDMWL). RDMWL § 101 (Dec. 30, 2011) (requiring measurements of the elevation of a low point in a natural control section and the mean depth of flowage from June 1 to September).

This absence of a clear DEC determination of the dock's placement in relation to the mean water mark, paired with Burke's statements directing Grimaldi move the dock to a location "beyond the mean water level," present a clear dispute of material fact concerning the mean

8

water mark of Nelson Pond. We therefore conclude that parties have provided evidentiary material sufficient to show a genuine dispute of material fact in the record. V.R.C.P. 56 (c).

As there exists a genuine dispute of material fact concerning both the dock location and the mean water level of Nelson Pond, this Court is unable to reach a conclusion concerning whether Grimaldi's use of the dock violates the Town LUDR or whether the Town has authority to regulate the Grimaldi dock. We therefore **DENY** both Grimaldi's and Appellants' cross motions for summary judgment on Question 2.

## II. Appellants' Motion to Dismiss

Grimaldi moves to dismiss Appellants' Questions 3 and 4 pursuant to V.R.C.P. 12 (b)(1) and V.R.E.C.P. 5 (f). Pursuant to Rule 12(b)(1), the Court accepts as true all uncontroverted factual allegations and construes them in the light most favorable to the nonmoving party. In re Goddard Coll. Conditional Use, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.). For purposes of the motion to dismiss, Appellants are the nonmoving party.

### a. Question 3

Appellants' Question 3 asks: "May the Town of Calais regulate through its zoning provisions the use of lands within the Shoreland overlay zoning district, including the structures located on them, and access through such lands to public waters?"

Grimaldi moves to dismiss this question, arguing that does not invoke any actual dispute and therefore constitutes an advisory opinion. In the alternative, Grimaldi seeks clarification of this Question.[6] Appellants respond that this Question is intended to focus on the authority of the Town to regulate the use of lands by Grimaldi and recognizes that the question was "not phrased with the requisite particularity."

Our Constitution confers upon this Court limited judicial authority: "the right to determine actual controversies arising between adverse litigants." In re Bennington Sch., Inc., 2004 VT 6, ¶ 19 (quoting In re Constitutionality of House Bill 88, 115 Vt. 524, 529 (1949)). As such, advisory opinions are outside our jurisdictional power. "The constitutional directive that

---

[6] In Grimaldi's reply to Appellants' cross motion for summary judgment, Grimaldi states that she does not oppose the Court granting Appellants leave to clarify this Question.

9

an actual case and controversy be presented to a court, lest it render and impermissible advisory opinion," is not met where Appellants merely ask for an opinion involving "hypotheticals that may not may not exist." See In re Lathrop Limited Partnership, No. 122-7-04 Vtec, slip op. at 9–10 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2011) (Wright, J.); In re Martin & Perry, LLC, No. 222-10-08 Vtec, slip op. at 5–6 (Vt. Super. Ct. Jan. 22, 2010) (Durkin, J.) (holding that the Court can not render a determination upon an application not currently presented). Here, Appellants appealed an NOV to the DRB, which concluded that the Town had "no jurisdiction in th[e] matter." See Grimaldi NOV, Decision regarding Notice of Violation, at 1 (City of Calais Dev. Rev. Bd. Dec. 11, 2019). In the light most favorable to Appellants, this Question appears to address the same issue considered at the DRB concerning the Town's jurisdiction. Indeed, this question does not raise any new hypothetical proposals that were not reviewed below.

For these reasons, we conclude that Question 3 does not seek an advisory opinion. We therefore **DENY** Grimaldi's motion to dismiss Question 3. We further **GRANT** Appellants leave to amend this Question in light of this Court's discussion concerning the Town's jurisdiction over the Grimaldi dock addressed above.

### b. Question 4

We next address Appellants' Question 4, which concerns whether the Town has jurisdiction to regulate the placement of Grimaldi's dock. Appellants' Question 4 asks:

> Does the Town of Calais have jurisdiction to regulate the placement and use of Susan Grimaldi's dock consistent with the Vermont's Public Trust Doctrine set forth in Chapter II, § 67 of the Vermont Constitution and notwithstanding the Lake Encroachment Permit program established in Chapter 11 of Title 29, Vt. Stat. Ann.?

Grimaldi Statement of Questions filed on Jan. 29, 2020, at 1.

Grimaldi seeks to dismiss this Question as it challenges the constitutionality of a "statutory scheme" and therefore falls outside this Court's jurisdiction. Appellants counter that this Question is meant to address the scope of authority of the Town to regulate Grimaldi's dock "in light of the Public Trust Doctrine" and does not challenge the constitutionality of the V.S.A. Title 29 Chapter 11.

10

This Court has jurisdiction over constitutional challenges related to, inter alia, permit appeals, zoning regulations, and agency rules. 24 V.S.A. § 4472(b); 34 Fitzsimonds Rd 3-Lot Subdivision, No. 68-6-18 Vtec, slip op. at n.6 (Vt. Super. Ct. Envtl. Div. Apr. 25, 2019) (Durkin, J.); In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 17, 204 Vt. 301 (2017) (citing In re LaBerge NOV, 2016 Vt. 99, ¶ 15); In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec slip op. at 5 (Vt. Envtl. Ct. Apr. 07, 2008) (Wright, J.); University Mall, LLC v. City of South Burlington, No. 10-28-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Apr. 09, 2013) (Durkin, J.).

In their motion, Appellants appear to argue that the public trust doctrine limits state authority to land below the low water mark in contrast to Title 29 Chapter 11, which administers the lake encroachment program and retains regulatory authority up to the mean water mark. 29 V.S.A. §§ 401, 401. To the extent that Question 4 seeks a determination from this Court concerning the jurisdictional boundaries of the state's authority under the public trust doctrine, this question does not directly challenge the constitutionality of Title 29 Chapter 11. Indeed, this Question does not request this Court to determine whether Title 29 Chapter 11 is consistent with Appellants' assertion that the public trust doctrine limits the state's authority to regulate land below the low water mark. For this reason, construing all uncontroverted factual allegations in the light most favorable to Appellants, we **DENY** Grimaldi's motion to dismiss Question 4.

## Conclusions of Law

For the reasons articulated above, we **DENY** both Appellants' and Grimaldi's motion for partial summary judgment on Question 2 and **DENY** Grimaldi's motion to dismiss Appellants' Questions 3 and 4. We further grant Appellants leave to amend Question 3.

Electronically Signed: 7/20/2021 1:47 PM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division

11