**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**John SCHMITT, Adam Schmitt, d/b/a Channel Marine Suzuki and Schmitt's Marina, and Adam Schmitt, d/b/a Adams Fishing Station, Defendants–Appellants,**

City of New York, Defendant–
Appellant,

Carl Mednica, individually and as
President of Cave Diggers, Inc.,
and Adele Schmitt, Defendants.

Docket No. 00–6063.

United States Court of Appeals,
Second Circuit.

Jan. 23, 2002.

Donald L. Citak, Citak & Citak, New York, NY, for Defendants–Appellants Adam and John Schmitt and the businesses Channel Marine Suzuki, Schmitt's Marina, and Adams Fishing Station.

Tahirih M. Sadrieh; Edward F.X. Hart, Warren Shaw, of counsel, New York, NY, for Defendant–Appellant the City of New York.

Kevan Clearly; Deborah D. Zwany, Stanley N. Alpert, of counsel, Brooklyn, NY, for Alan Vinegrad, United States Attorney for the Eastern District of New York, for Plaintiff–Appellee United States of America.

Present SACK, KATZMANN, and PARKER, Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of

March 31, 1998 be, and it hereby is, AFFIRMED.

The defendants Adam and John Schmitt doing business as Channel Marine Suzuki, Schmitt's Marina, and Adams Fishing Station (collectively "the Schmitts" or "the defendants") appeal from a March 31, 1998 judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*), holding that they violated the Rivers and Harbors Appropriation Act, 33 U.S.C. § 403 *et seq.*, violated the Clean Water Act, 33 U.S.C. § 11 *et seq.*, and trespassed on federal waters.

The United States initiated suit based on the Schmitts' alleged 1976 construction of a riprap wall on a piece of marshland called "the Hook" in Jamaica Bay, and their maintenance of eight unauthorized docks in an adjacent cove on Jamaica Bay. In response, the Schmitts: (i) filed a third party action against the City of New York ("the City") requesting a declaratory judgment of the extent of land they leased and of their right to purchase currently occupied property from the City, and (ii) began Article 78 proceedings in New York Supreme Court, later consolidated into this federal action, seeking to compel the City to sell land to them. The district court held against the Schmitts in every respect, requiring them to restore the Hook, remove unlicenced docks from federal waters, vacate City land, and refrain from further construction in the Cove.

The Schmitts appealed asserting that: (1) they were not responsible for the filling of the Hook; (2) their leasehold was greater than 40,000 square feet; (3) Big Egg Marsh and their marina lie outside a 1974 conveyance to the federal government such that any dumping or dock construction did not occur on federal property; (4) their docks are permitted under Army Corp.

regulations: (5) the City's refusal to sell them land was arbitrary.

■ After a bench trial, we review a district court's findings of fact for clear error. *See* Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous ...."); *see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 145 (2d Cir. 2001). None of the district court's findings that the defendants challenge is clearly erroneous.

First, the district court amassed a great deal of circumstantial evidence of the Schmitts' responsibility for the filling of the Hook. This included "photographs and documentary evidence" and Steven Goverman's testimony, all showing that the dumping of fill "was done not for disposal purposes ... but for a construction purpose." The Schmitts' need for a riprap wall on the Hook was such a purpose. Between the 1960s and 1980s, the Schmitts greatly expanded the marina, adding new docks. In 1976, Adam Schmitt requested permission to place riprap in "washed-out areas," where "the wind and strong tide" damaged his "docks and walks." Further, John Schmitt admitted stringing "rope and tires along the area at the edge of the Hook ... [t]o act as a breakwater." A 1976 United States Army Corp. cease and desist letter to Adam Schmitt's wife, Ernestine, also supported the finding that the Schmitts were responsible for the illegal dumping. Based on these findings of motive and indirect indicia of culpability, there is no clear error in the district court's conclusion.

Second, the defendants' claim to more than a 200′ × 200′ parcel founders because the documents upon which they rely are ambiguous. To support their claim, they identify 1962 documents marking increases in their rent, and claim these show

an expanding leasehold. The first document they point to, however, lists the same area of land (40,000 square feet) at the same location (at the foot of West 20th Road) as previous leases from 1944 and 1952. Other 1962 documents only record a rent increase. Because the Schmitts are unable to document their ownership of more than a 200′ × 200′ parcel, the district court did not clearly err on this point.

Third, the district court relied on a definitive map of the 1974 conveyance showing the "city-owned property to be conveyed to the United States of America for the Gateway National Recreational Area," that was endorsed as an approved map by the Board of Estimate, the governmental body supervising New York City at that time. Review of this map makes clear that Big Egg Marsh, and hence the marina and the Hook, is inside this conveyance to the federal government. Although the difference between the shaded (conveyed) and unshaded (not conveyed) parts of the island in some copies of the map cannot easily be discerned, a color copy of the map shows the lack of shading of Big Egg Marsh, demonstrating that it was conveyed to the federal government. The district court's finding was not clearly erroneous.

Fourth, pursuant to 33 C.F.R. § 330.5(a)(2), the Schmitts claim their docks are structures "in artificial canals within principally residential areas." Even cursory examination of recent photographs of the area, reveals that the district court correctly observed that "the Cove ... is bounded by wetlands and marshes." Further, the closest development to the Cove appears to be the Schmitt marina, a commercial rather than a residential structure. The Schmitts also claim that their docks are permitted under NWP 3, 33 C.F.R. § 330.3(b) (2001); 67 Fed.Reg.2020, 2078 (Jan. 15, 2002), which grandfathers certain structures present in federal waters prior to December 18, 1968, as well as subsequent repair and rehabilitation of such structures. However, as Judge Spatt determined, the only structures subject to grandfathering here are Dock A and its small appurtenance. The fact that mooring buoys and pilings were previously present in the marina is irrelevant. Similarly, NWP 28, 67 Fed.Reg.2020, 2083 (Jan. 15, 2002), is inapplicable here because it expressly provides that "additional slips or dock spaces" are not authorized. Thus, Judge Spatt's detailed analysis, based upon his knowledge of the surrounding geography, and his determination of the Schmitts' ineligibility was not clearly erroneous.

■ Finally, the City could refuse to sell to the Schmitts for several reasons including their violations of state law. The Schmitts nevertheless claim that such violations are not valid reasons to refuse to sell "since many Broad Channel residents had DEC violations." Nothing in the record supports this contention. Nor is there evidence suggesting that the condition is new: In its initial letter informing the Schmitts of the possibility of purchasing leased land, the City noted that it "is restricted from selling land to *anyone* in violation of *any* governmental regulation" (emphasis added). There was no clear error in the finding that the City's refusal to sell was not arbitrary.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.