**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Theodore ANGELL, Defendant–Appellant.**

**Docket No. 01–6141.**

United States Court of Appeals, Second Circuit.

Argued April 5, 2002.

Decided May 16, 2002.

Theodore Angell, pro se, Riverhead, NY, for Defendant–Appellant.

Kevan Cleary, Assistant United States Attorney, Brooklyn, N.Y. (Deborah B. Zwany, Stanley N. Alpert, of counsel, for Alan Vinegrad, United States Attorney for the Eastern District of New York), for Plaintiff–Appellee.

Before: KEARSE, SACK, and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Theodore Angell, proceeding *pro se,* appeals from a May 29, 2001 judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge* ), granting the Government summary judgment and holding that Angell violated the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. §§ 401 *et seq.,* by adding two floats to his dock in the Silver Brook Canal in Flanders, New York, without a permit from the United States Army Corps of Engineers ("Army Corps").

**I.**

The material facts are undisputed. Angell is a resident of Flanders, in Suffolk County, New York. His property is located at the end of the Silver Brook Canal, a small channel approximately 45 to 50 feet wide and 500 feet long. The Canal is an arm of Reeves Bay, which adjoins Flanders Bay, which in turn provides access to Long Island Sound and the Atlantic Ocean. When tidal conditions permit, the Canal is used by small pleasure boats, including Angell's.

In 1988, based on plans he submitted to the Army Corps, Angell applied for and obtained an Army Corps permit that authorized (i) the installation of a "timber pier assembly" consisting of a pier, a walk ramp attached to the pier and connected to an outer float, and a timber bulkhead, and (ii) the deposit of certain fill trucked in from a site upland from the bulkhead. Angell subsequently built the foot pier, ramp, outer float, and bulkhead as allowed by the permit.

Thereafter, storms apparently caused significant damage to the dock system. To protect the structure, in the early 1990s, Angell applied for and was granted a permit from the New York State Department of Environmental Conservation (the "DEC") to build two additional floats that, together with the initial outer float, form a "U" shape. The Town of Southampton, in which Flanders is located, also issued permits for construction of the two floats in 1992 and 1993. Unlike 1988, however, Angell did not apply directly to the Army Corps for a permit, although he used a joint DEC–Army Corps application form, and he has never received an Army Corps permit for the additional floats. The dock structure, which spans most of the width of the Canal, currently comprises a foot pier and ramp leading to a U-shaped floating dock consisting of the initial float and two additional outer floats.

The United States sued in December 1997 alleging, *inter alia,* that the Canal was a navigable waterway, that the new construction had not been authorized by the 1988 permit, and that the additional

floats were unlawful without a permit from the Army Corps. The Government sought an injunction to compel Angell to remove the floats and, after discovery, moved for summary judgment in September 2000. In May 2001, the District Court granted the motion, finding that the Canal, as a tidal water body susceptible to interstate or foreign commerce, was navigable under section 10 of the Rivers and Harbors Appropriation Act, 33 U.S.C. § 403; 33 C.F.R. § 329.4, and that the new construction was prohibited without an Army Corps permit. The District Court issued an injunction under section 12 of the Act, 33 U.S.C. § 406, requiring Angell to remove the new floats and to refrain from installing additional structures in violation of section 10.

## II.

We review the grant of summary judgment *de novo*. *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir.2001). On appeal, Angell concedes that he did not obtain an Army Corps permit for the additional floats. However, he contends that this permit was not necessary because the Canal is not navigable and the Army Corps delegated its permitting authority to the DEC, which issued a permit for the floats and deemed them "reasonable and necessary." Angell also contends that the additional docks were "in place and pre-existing" for four years before the Government sued him, suggesting that this action is barred by the Government's delay.

 Section 10 of the Rivers and Harbors Appropriation Act provides in relevant part:

The creation of any obstruction not affirmatively authorized by Congress, to the

navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any ... pier ... or other structures in any ... canal ... or other water of the United States ... except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army....

33 U.S.C. § 403 (2000). Thus, "a permit from the Army Corps of Engineers is required for the installation of any structure in the [nation's] navigable waters which may interfere with navigation, including piers, docks, and ramps." *PUD No. 1 of Jefferson County v. Washington Dep't of Ecology*, 511 U.S. 700, 722, 114 S.Ct. 1900, 128 L.Ed.2d 716 (1994); *see* 33 C.F.R. § 325.8 (2001) ("[T]he Secretary of the Army ... has authorized the Chief of Engineers and his authorized representatives to issue or deny permits ... for construction or other work in or affecting navigable waters of the United States pursuant to section 10 of the Rivers and Harbors Act of 1899 ..."). Army Corps regulations define "navigable waters" as "those waters that are subject to the ebb and flow of the tide and/ *or* are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce." 33 C.F.R. § 329.4 (2001) (emphasis added).

 The Silver Brook Canal is tidal, as its level fluctuates with the ebb and flow of the tide. In fact, as Angell concedes, easy passage is apparently possible only when the tide is high. Accordingly, we conclude that the Canal is navigable. *See United States v. Stoeco Homes, Inc.*, 498 F.2d 597, 610 (3d Cir.1974) (stating that the test for navigability of tidal waters is the ebb and flow of the tide).[1] The fact

---

**1.** *Stoeco Homes* is particularly helpful for the distinction between tidal and non-tidal waters for purposes of determining navigability. The

admiralty definition of navigability, adopted from English common law, focused on the ebb and flow of the tide. However, in *The*

that the Canal may be impassable at low tide is immaterial, as Army Corps jurisdiction under section 10 "extends to the line on the shore reached by the plane of the mean (average) high water." 33 C.F.R. § 329.12(a)(2) (2001). The District Court correctly concluded that Angell's floating docks are "structures" under section 10. *See United States v. Schmitt,* 999 F.Supp. 317, 328, 370 (E.D.N.Y.1998), *aff'd,* 28 Fed. Appx. 63 (2d Cir. Jan.23, 2002). In addition, because the Canal provides access to the Atlantic Ocean it is clearly susceptible to interstate or foreign commerce. *Cf.* 33 C.F.R. § 329.6(a) (2001) ("[T]he presence of recreational craft may indicate that a waterbody is capable of bearing some forms of commerce, either presently, in the future, or at a past point in time.").

■■■ Angell used a joint DEC–Army Corps permit application form to apply to the DEC for permission to build the two additional floats. He argues that this form shows that the Army Corps delegated its permitting authority to the DEC, rendering a separate application to the Army unnecessary. Because Angell neglected to raise this argument in the District Court, it is not properly before us. *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 147 (2d Cir.2001) (applying the "general rule ... that a federal appellate court does not

consider an issue not passed upon below") (quoting *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). Were we to consider it, however, we would conclude that the argument lacks merit. Congress has given the Army Corps exclusive jurisdiction to enforce the Rivers and Harbors Appropriation Act, which governs permits in the Silver Brook Canal. 33 U.S.C. § 403; *cf. Willamette Iron Bridge Co. v. Hatch,* 125 U.S. 1, 10, 8 S.Ct. 811, 31 L.Ed. 629 (1888) (holding that a state may authorize obstruction of a navigable stream, but only in the absence of a congressional enactment). Moreover, the mere existence of a joint form does not demonstrate that submission of an application to the DEC is an application to the Army Corps. The Government contends that the joint form serves to "minimize paperwork while allowing both agencies to administer their separate spheres of responsibility." The sole document Angell offers for his delegation theory supports this view, as it states only that the Army Corps "receive[s] copies of NYSDEC approved permits." Thus, even if Angell "submitted" his application to the Army Corps, the record is clear that he never received a permit from the agency for construction of the two additional docks.

---

*Daniel Ball,* 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870), Justice Field questioned the ebb and flow test because certain rivers in the United States were navigable but non-tidal. A different test, based on "navigable capacity" was applicable to these rivers, which are navigable "when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." *Id.* at 563. The tenor of Justice Field's discussion of the ebb and flow test could be interpreted as a rejection of that test for both tidal and non-tidal waters. *See id.* ("Here the ebb and flow of the tide do

not constitute the usual test, as in England, or any test at all of the navigability of the waters."). However, read in the context of the case—which dealt with an inland river—the more reasonable view is that *The Daniel Ball* merely expanded the definition of navigability to accommodate the navigable capacity of non-tidal waters. *See Stoeco,* 498 F.2d at 610 ("In non-tidal waters the test is actual or reasonably potential navigability. In tidal waters the test, in our view, remains ... the ebb and flow of the tide."). This dichotomy is reflected in the Army Corps definition of "navigable waters," discussed and applied *supra,* where a body of water is navigable if it satisfies the ebb and flow test or is susceptible to interstate or foreign commerce.

Finally, to the extent Angell contends that the Government should be barred by laches, he is mistaken. Beyond the fact that Angell did not argue this issue below, laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest. *See United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *United States v. Arrow Transp. Co.,* 658 F.2d 392, 394 (5th Cir. Unit B Oct.1981).

Because Angell constructed additional docks in the Canal without the required Army Corps permit, the judgment of the District Court is AFFIRMED.